THE ELDER OR MINISTER, DEACONS AND TRUSTEES OF THE FIRST BAPTIST CHURCH IN HARTFORD *vs.* WITHERELL and others.

Where property is conveyed for the use of an unincorporated religious society, and such society is afterwards incorporated under the general act authorizing the incorporation of religious societies, the legal title to such property thereby becomes vested in the corporation.

The statute authorizes the members of the congregation, and not merely the members of the christian church connected with such congregation, to incorporate themselves ; and the majority of the stated hearers in such religious society are authorized to elect trustees and incorporate the society, although the persons composing such majority may have been excommunicated by the church judicatories for heterodox opinions or unchristian practices.

The members of the church have no greater rights as corporators than any other members of the congregation, who statedly attend divine worship with them.

The legal tribunals of the state have no jurisdiction over the church, or the members thereof, as such ; and the ecclesiastical judicatories are not authorized to interfere with the temporalities of a religious society or congregation.

A church judicatory cannot remove a clergyman from his situation, as minister of a society or congregation, without the consent of a majority of the members of the congregation, or of their legally constituted trustees, if the society is incorporated.

It seems that the court of chancery will not interfere to prevent the trustees of a religious society from employing a particular individual as their clergyman, although his religious tenets should be at variance with those of the original founders of the society, and from whom its temporalities were derived.

The pew owners are only entitled to the use of their pews for the ordinary purpose of sitting therein during divine service. But they may maintain

case, trespass or ejectment, according to [the circumstances, if they are improperly disturbed in the legitimate exercise of their legal right to use their pews in that manner. But in other respects they have no greater rights in the church than the other members of the congregation.

THIS was an application for an injunction. The complainants' bill stated, in substance, that previous to October, 1813, a Baptist church or society was organized in Hartford, in fellowship with, and under the government of the regular Baptist Association of that part of the state of New-York. That on the 9th of October, 1813, A. Norton and wife sold and conveyed to that society, by the name of "The elder or minister, deacons, wardens or vestrymen, and their successors in office, of the first Baptist church in Hartford," a lot of ground for the purpose of erecting thereon a Baptist meeting house, for the sole and only use of the said Baptist church and society or congregation, as such, in regular standing and fellowship with such association. That a meeting house was erected on the lot by the said society, and the expense thereof was defrayed by a sale of the pews. That the society, though not legally incorporated, conducted their temporal and spiritual affairs in harmony, until about October, 1829, when the defendant G. Witherell, their officiating elder or minister, and the other defendants, together with others composing a majority of the church, entered upon and pursued a course of conduct so proscriptive, unchristian, and utterly at war with the principles of of the Baptist church and of christianity, towards the minority the church and society or congregation, that the latter felt themselves bound to dissent from their proceedings, and to appeal to the Washington Baptist Association, which was the regular tribunal constituted by all the Baptist churches in the county of Washington, to take cognizance of, and decide upon all ecclesiastical grievances of that and the like nature ; a decision of which association, or of a council appointed by them, was final and conclusive, unless appealed from. That in August, 1831, an ecclesiastical council of the association assembled, and after hearing the complaint of the minority, the council decided that such minority was the regular Baptist church in Hartford. That the minority being thus recognized as the regular church, and the decision of the coun-

*1832.*

Baptist Church
in Hartford
v.
Witherell.

May 15.

cil not being appealed from, they caused themselves to be duly incorporated, under the act of the legislature, in November, 1831, and elected nine of their number trustees of such incorporated society ; and that the certificate of their election and incorporation was duly acknowledged and recorded. That the complainants afterwards possessed themselves of the meeting house and other temporalities of the church, except the communion vessels and the records of the church which some of the defendants withheld from them. That the complainants employed a Baptist clergyman, in regular standing, to preach for them and administer the ordinances in the church ; but when they opened the church on the Sabbath for divine worship, the defendant Witherell, acting in concert with the other defendants, obtruded himself into the pulpit, and excluded the complainants' minister from preaching. And that the defendants then took possession of the church, which they still retained. The complainants also stated that the corporators whom they represented owned more than two thirds of the meeting house, and that the defendants and those who adhered to them owned less than one third ; and that the defendants, since the decision of the council, had wholly withdrawn themselves from the fellowship, communion and government of the Baptist Association. The bill prayed that the custody and control of the meeting house and other temporalities of the church might be decreed to belong to the complainants and their successors, to the end that the same might be appropriated to the uses for which the house was originally erected ; or that an account might be taken of the interests of the complainants, and of the corporators they represent, in the meeting house and pews, and that the defendants might be compelled to pay them the amount thereof for the benefit of their church and society. The bill also prayed for general relief ; and for a preliminary injunction, restraining the defendants from occupying the pulpit or impeding the complainants from celebrating divine worship in the church by a Baptist minister in regular standing, and from using or interfering with the temporalities of the church.

Notice of the application for an injunction was given to the defendants. And they put in an affidavit and certificate, showing that on the 6th of September, 1831, in pursuance of the

usual notices given, by the defendant Witherell, from the pulpit, a meeting was held for the purpose of incorporating the society; that five of the defendants, together with another person, were chosen trustees; that two of those persons, who were elected to preside at that meeting, certified the election of such trustees, and also certified that the corporation was to be called and known by the name or title of " The Trustees of the First Baptist Church and Society of the town of Hartford ;" and that the certificate was duly acknowledged and recorded, as required by the statute.

*S. Stevens,* for the complainants.

*J. Crary,* for the defendants.

THE CHANCELLOR. It is evident, from the affidavit on the part of the defendants, that here are two corporations, or bodies claiming to be corporations, contending for the possession of this meeting house. If the only contest between these parties is as to which is the corporation legally entitled to the possession of the temporalities of the church or society originally formed in Hartford, I think the complainants have mistaken their remedy. They should have settled that right either by an action of trespass against the individuals who took possession of the pulpit, or by an action of ejectment to recover possession of the meeting house. By referring to the statute relative to the incorporation of religious societies, (3 *R. S.* 295, § 4,) it will be found that the trustees of a church or society, when legally incorporated, are authorized to take into their possession all the property of the society, whether the same was given directly to such church or society, or to any other person for their use ; and they are to hold such property as fully and amply as if the right or title thereto had been originally vested in the trustees. I think the only rational construction which can be given to this part of the statute is, that if the grantor or any other person held the estate originally in trust for the church or society, the legal estate is transferred to the corporation whenever the requisites of the statute are compli-

1832.

Baptist Church
in Hartford
v.
Witherell.

ed with, so as to render them legally competent to take property in their corporate character.

In the case of *The Trustees of the Philadelphia Baptist Association* v. *Hart's Executors*, (4 *Wheaton's Rep.* 1,) the supreme court of the United States decided that an unincorporated association could not take land by devise to them in the name of their society, and that a devise of that description could not be executed by a court of chancery, as a charity by the common law. But, in a subsequent case, the same court sustained a bill by the nominal trustees of an unincorporated religious society, to protect their right to a lot of ground, granted for the use of such society by the name of " The German Lutheran Church." (*Beatty & Ritchie* v. *Kurtz*, 2 *Peters' Rep.* 566.) And in the late case of *Inglis* v. *The Sailors' Snug Harbor*, (3 *Idem.* 114,) they held a devise valid, which provided for the vesting of the property in a corporation to be thereafter created. Similar decisions have been made in several of the state courts in respect to lands granted or devised for pious uses, or other purposes of charity. (1 *Greenl. Rep.* 271. 9 *Mass. Rep.* 44.) At the time the deed of Norton and wife was executed, conveying the property to this society, by their associate name, the statute was in existence, by which the members of the society were authorized to incorporate themselves whenever they thought proper ; and by which statute it was declared that the legal title to property thus conveyed should, in that event, vest in the corporation. The legal title being in the corporation which was first properly constituted, the parties must be left to their legal remedy to ascertain whether the complainants are entitled to the possession of the property, or the corporation of which a part of the defendants are trustees, if there can be any doubt on that subject.

It may, however, be proper, as it may save unnecessary litigation to these parties, to state briefly my views on that question. The complainants appear to have acted on the supposition that the decision of the ecclesiastical judicatory, that a certain portion of the members of the Baptist church in Hartford were heterodox in doctrine or practice, and were not the true church, must have a legal effect upon the incorporation of the members of this religious society. But I apprehend that in

this they have overlooked the distinction between the congregation, and the church strictly so called, which comprises only a part of the congregation or society. The church consists of an indefinite number of persons, of one or both sexes, who have made a public profession of religion ; and who are associated together by a covenant of church fellowship, for the purpose of celebrating the sacrament, and watching over the spiritual welfare of each other. But a religious society, or congregation, as recognized by the third section of the statute providing for the incorporation of religious societies, is, with us, what is usually denominated a poll parish, in some of the neighboring states. It consists of a voluntary association of individuals or families, united for the purpose of having a common place of worship, and to provide a proper teacher to instruct them in religious doctrines and duties, and to administer the ordinances of baptism, &c. Although a church, or body of professing christians, is almost uniformly connected with such a society or congregation, the members of the church have no other or greater rights than any other members of the society who statedly attend with them for the purposes of divine worship. Over the church, as such, the legal or temporal tribunals of this state do not profess to have any jurisdiction whatever, except so far as is necessary to protect the civil rights of others, and to preserve the public peace. All questions relating to the faith and practice of the church and its members belong to the church judicatories, to which they have voluntarily subjected themselves. But, as a general principle, those ecclesiastical judicatories cannot interfere with the temporal concerns of the congregation, or society, with which the church or the members thereof are connected. It follows, from this view of the subject, that these defendants, although they may have been rightfully excluded from the communion and fellowship of the Baptist church, on account of anti-sabbatarianism, or some other heresy, as suggested by the complainants' counsel, yet they may still not only be legal voters as members of the congregation or society, but they may be elected trustees, and have the management of the temporal concerns of the congregation.

The affidavit on the part of the defendants shows that the incorporation of the society, on the 6th of September last, was

made upon due notice from the pulpit, in the usual form, as prescribed by the statute ; and that the members of the congregation generally attended and voted for trustees. Although one of the notices must probably have been given by Elder Witherell after the decision of the ecclesiastical council, this did not render the notice invalid.   It is not pretended but that he was at that time the minister in fact of the congregation ; although, as a member of the scismatic part of the church, the council had decided against him.   If I am correctly informed as to the usages of the calvinistic Baptists, it is to ordain their clergymen to the work of evangelists, or ministers of the gospel at large, and not as the ministers of any particular churches or congregations ; and they preach the gospel and administer the ordinances by virtue of that general authority, and not in consequence of their connection, by church membership, with a particular church.   Although as a member of this church, Elder Witherell may have been rightfully excluded from church fellowship with the Baptist Association of Washington county, it is not alleged in the bill that the council had any authority to deprive him of the privileges of the ministry. And they certainly had no right to remove him from his situation as minister of any particular society or congregation, without the consent of the majority of the members thereof ; or of their legally constituted trustees, if they were incorporated.   My opinion, therefore, upon the facts now before me, is, that the corporation organized on the 6th of September succeeded to the temporal rights of this society ; and that the trustees of that incorporation are legally entitled to the possession and control of the meeting house and other temporalities of the congregation.

The fact that the corporators whom the complainants represent own two thirds of the pews, cannot alter the rights of the parties.   The grant of a pew in perpetuity does not give to the owner an absolute right of property, as in a grant of land in fee.   The grantee is only entitled to the use of the pew, for the purpose of sitting therein during divine service. (*Sayer's Rep.* 177.   1 *Phil. Rep.* 323.   3 *Picker. Rep.* 344. 4 *New-Hamp. Rep.* 480.   7 *Picker. Rep.* 138.)   But the owner of the pew may maintain case, trespass or ejectment, ac-

cording to the circumstances, if he is improperly disturbed in the legitimate exercise of his legal right to use his pew for that purpose.

The question whether the trustees of this society can lawfully change the nature of the institution, as originally established, cannot be decided between the present parties. If the defendants, as trustees of the corporation which has the legal control of the temporalities of this society or congregation, abuse the trust reposed in them by the corporators or those for whose benefit they hold the property, and misapply the funds of the society, I am inclined to think this court, at common law, has power to compel them to account for such misapplication ; notwithstanding the provision in the revised statutes excepting religious incorporations from the visitorial power which is expressly given to the chancellor in relation to ordinary corporations. (2 *R. S.* 461, *art.* 2.) But it must be a most plain and palpable abuse of power, which will induce this court to interfere as to any dispute growing out of religious or sectarian controversies. In the case of *The Attorney-General* v. *Pearson,* (3 *Meriv. Rep.* 264,) to which I was referred, on the argument, as a leading case on this subject, Lord Eldon did interfere to prevent the trustees of a church erected for Trinitarian Protestant dissenters from being converted into an Unitarian chapel ; although a great portion of the members of the congregation were said to have embraced the new doctrines. It must, however, be recollected that the chancellor was there administering the equity of the statute, (43 *Eliz. ch.* 4,) relative to charitable uses; which statute is not in force here. His lordship puts his decision upon the ground that the court is bound to see the trust executed according to the intention of the original founders of the charity, without enquiring whether the doctrines intended to be taught in that particular church be right or wrong. In the case under consideration I presume the original founders of the Baptist church in Hartford, in conformity with the generally received opinion among calvinistic Baptists, believed the holy sabbath was of Divine institution ; and that they intended such doctrines should be taught in that church and congregation. Upon that supposition, if Elder Witherell is permitted by the trustees to inculcate a different doctrine in his public discourses in this church,

I presume Lord Eldon would consider it such a departure from the original establishment as to justify his interference. Even in that case, however, he would require the facts to be stated in the bill, so that the defendants might take issue thereon. Where this court is obliged to administer a trust, the chancellor cannot put his conscience into the keeping of any ecclesiastical or other tribunal. But the nature of the original trust, and the particulars in which it has been violated, must be stated in the pleadings ; so that the court may see in what that violation consists. For aught that appears on this bill, the council of the association may have decided against Elder Witherell because he preached some other doctrine, from the pulpit, as inconsistent with the original foundation of the society as anti-sabbatarianism ; but which this court might consider a political rather than a religious heresy. I confess I have always entertained serious doubts whether any civil tribunal in this state could interfere to prevent the majority of the corporators in a religious society from introducing such changes, in the doctrines or modes of worship in their churches, as they might deem expedient ; and which they could introduce through their trustees, elected in the manner prescribed by law. For myself, although my opinions are fixed and settled as to the essential doctrines of christianity as taught in the church to which I belong, I am unwilling, as a civil judge, to assume the responsibility of deciding upon the correctness of the religious tenets of others, either in matters of faith or otherwise. Neither am I prepared to say that it would be right, or expedient, to adopt the principle of Lord Eldon here, where all religions are not only tolerated, but are entitled to equal protection by the principles of the constitution. Upon Lord Eldon's principle, a society of infidels, who had erected a temple to the goddess of Reason, could not, upon the conversion of ninth tenths of the society to christianity, be permitted to hear the word of life in that place where infidelity and error had once been taught. And upon the same principle, the newly created equity jurisdiction in a neighboring state might find itself constrained to order some of the parishes within its limits to employ religious teachers who should inculcate the doctrine of witchcraft as it was taught in their

churches at the time of their first organization. If courts are unwilling to go these lengths, they must abandon the principle, or assume the responsibility of deciding for the consciences of others what are and what are not essential differences of opinion in matters of faith, as well as of practice.

Without pursuing this subject further, it is sufficient for the decision of this application to say, there is nothing in this bill to authorize the court to grant the relief which is now asked for against these defendants.

The motion for an injunction is therefore denied, with costs.