### IN THE

# SURROGATE'S COURT

### OF THE

## COUNTY OF NEW YORK.

BEFORE ALEXANDER W. BRADFORD, SURROGATE.

## McNABB *vs.* POND.

### *In the matter of the Estate of* HENRY HAVENS, *deceased.*

ALTHOUGH the owner of a pew in a church has no absolute interest in the soil on which the edifice is erected, his right to the use of the pew is a right springing out of the land, and, in this respect, has some of the qualities of realty.

The property in a pew being indeterminate as to its duration, that is, not limited by any definite space of time. and also issuing out of realty, it is therefore an incorporeal hereditament.

Incorporeal hereditaments descend to the heir-at-law, and not to the personal representatives—the executor or administrator cannot, therefore, be held to account for the proceeds of the sale of a pew belonging to the deceased person whom he represents.

W. C. WETMORE, *for Claimant.*

J. M. KNOX, *for Heirs.*

With regard to the pew in the Dutch Church, on Lafayette Place, pretended to be sold on 19th February, by the administrator, we say :

I. A church pew is not assets in the hands of the administrator.  (2 *R. S.* 268, 4*th ed. ; Dayton*, 2*d  ed., p.* 246.)

II. A pew is an incorporeal hereditament, (3 *Kent Com. p.* 402.)  It is not mere personal property, but real property ; although perhaps not real estate.  In this case the grant from the church is in perpetuity.  If the pew be neither assets in the hands of the administrator, nor real estate which may be sold by the Surrogate's order, the remedy of creditors is by bill against the heir, (*Boreel* vs. *Mayor*, 2 *Sand. S. C. R*, 552.)

THE SURROGATE.—The intestate was the owner of a pew, " by purchase," from " The Minister, Elders, and Deacons of the Reformed Protestant Dutch Church, in the city of New York," in the church in Lafayette Place, subject to the payment of such taxes as might be assessed upon the same by the Consistory of the Church.  By the terms of the deed it is manifest that the pew was sold, and not leased for a term of years.  The question now arises, whether this is real or personal estate.  In England, by the general law and of common right, all the pews in a parish church are the common property of the parish, for the use of the inhabitants.  The distribution rests with the churchwardens, subject to the control of the Ordinary ; and they cannot be sold or let without a special act of parliament.  (*Walter* vs. *Gunner*, 1 *Hagg. Con. R.*, 317 ; *Coleman* vs. *Campeigne*, 3 *Phill.*, 16 ; *Fuller* vs. *Lane*, 2 *Add.*, 425 ; *Wyllie* vs. *Mott*, 1 *Hagg.*, 29.)  By prescription, title to the use of a particular pew may be shown to have been attached as appurtenant to a certain messuage, so that the occupant of the house for the time being is entitled to the use.  (*Woollocombe* vs. *Ouldridge*, 3 *Add.*, 1.)  The practice in this State has been widely different, and the act for the Incorporation of Religious Societies provides in terms for the *renting* of pews according to such rules as the trustees shall adopt. (3 *R. S., p.* 206, § 4.)  The eleventh section of that act authorizes the sale of the real estate of such incor-

porations, with the consent and approbation of the Chancellor. A learned judge expressed the opinion, in *Voorhees* vs. *The Presbyterian Church of Amsterdam*, 8 *Barbour S. C. R.*, 135, that no power existed to sell a pew, that the trustees could only lease but not sell absolutely. Yet the first section of the act, in determining the qualifications of persons entitled to vote at the election of churchwardens and vestrymen in the Protestant Episcopal Church, enumerates persons who shall have been received into the church " by *purchasing* or hiring a pew or seat in said church." And although the fourth section authorizes trustees to regulate the renting of pews, it also gives general power over " all other matters relating to the temporal concerns" of the church. The usage as to the sale of pews has been general for many years, and except in the instance mentioned does not appear to have been doubted, though cases in which the question might have arisen, have been frequently before the courts. In *Freligh* vs. *Platt*, 5 *Cowen*, 494, it was held that by the grant of a pew, the grantee acquires a limited usufructuary right only during the continuance of the edifice. In *The First Baptist Church of Ithaca* vs. *Bigelow*, 16 *Wendell*, 31, the right to a pew was declared to be an interest in real estate, so as to bring its disposition under the provisions of the Statute of Frauds, and the same doctrine was recognized in *Vielic* vs. *Osgood*, 8 *Barbour, S. C. R.*, 130. But though the holder may have an interest in real estate, so long as that particular church edifice stands, the better doctrine seems to be that the right is limited and qualified, and does not give such an absolute interest in the soil as to prevent its alienation by the incorporation. In *Heeney* vs. *St. Peter's Church*, 2 *Edwards' V. Ch. R.*, 612, and in *The Matter of the Brick Presbyterian Church*, 3 *Edwards' V. Ch. R.*, 155, it was decided that the owner of the pew is only entitled to its use whilst the edifice stands, and has no right in the land. Chancellor Kent says: " in New York a pew-holder is held not to have an interest in the soil. The freehold of the church is in the trustees. The right of the pew-holder is not real estate." (3 *Kent. Com.*, 402.)

It must be conceded, however, that the right is one springing out of the land, and in this respect it has some of the qualities of realty. In *Shaw* vs. *Beveridge*, 3 *Hill's R.*, 26, it was decided that trespass may be maintained by the owner of a pew, against one who disturbs him in the possession, the owner having an exclusive right to the possession for the purposes of public worship by virtue of the grant of the corporation. (*First Baptist Church in Hartford* vs. *Witherell*, 3 *Paige*, 296.) Chancellor Kent treats of pews under the head of real estate, and classes them among incorporeal hereditaments. The term hereditament however, includes "anything capable of being inherited, be it corporeal, incorporeal, real, personal, or mixed." (3 *Kent. Com.*, 401 ; *Co. Litt.*, 6, *a.*) But our statute defines the terms "real estate" and "lands" as used in the chapter concerning real property its nature, and qualities, as co-extensive in meaning with "lands, tenements and hereditaments," (1 *R. S.*, *p.* 755, § 11;) and as used in the chapter relating to the title to real property by descent, "to include every estate, interest and right, legal and equitable in lands, tenements, and hereditaments," except "leases for years and estates for the life of another person." (1 *R. S.*, 755, § 27.) The statute which enumerates what property shall be deemed personal assets in the hands of executors and administrators to be stated in the inventory, includes leases, estates *pur autre vie*, and every other species of personal property and effects, (2 *R. S.*, *p.* 82, § 6;) and then it is expressly declared that "the right of an heir to any property not enumerated" "which by the common law would descend to him," shall not be impaired by the general terms of the previous enumeration. The section exempting certain articles from the inventory, for the use of the widow and younger children, is copied from the portion of the statute excepting articles from sale on execution ; it does not, however, include a pew or seat in church, which is exempted from sale on execution. If the pew had been regarded as personal estate there would seem to have been no reason why it should not be included in the assets set apart

for the use of the family of the deceased. I may add that in *Johnson* vs. *Corbett*, 11 *Paige*, 276, which was a case of accounting by administrators, a pew was not considered as personal estate, "unless it was a lease of the pew for a term of years."

In *Leyman* vs. *Abeel*, 16 *John.. R.*, 30, it was held that a right to cut wood, devised by a father to his children, was a hereditament descending to the heirs-at-law of the devisees. This was a right of common in gross, arising out of real estate and not limited as to time. (See 4 *Kent*, 41, *Parke on Dower*, 110–112; *Boreel* vs. *The City of New York*, 2 *Sand. S. C. R.*, 552.) The right of an owner of a pew relates to the use of lands; it does not resemble a lease for years, by having a certain and definite time set for its expiration; it is not excepted out of the statute of descents, which provides for the succession of the heir to all hereditaments; and it is not included in the provisions regulating what shall be deemed assets in the hands of the executor or administrator. My opinion therefore is, that it is only the heir who can give title, and the administrator has no power to dispose of it by sale. I think that the ground of distinction as to what shall pass to the heir and what to the executor and administrator, in respect to rights issuing out of realty, depends upon the fact whether the right to the subject possesses this quality of real property, namely, a sufficient legal indeterminate duration. (2 *Bl. Com.* 386.) Estates for years do not possess this quality, the utmost period for which they can last being fixed and determined. (See *Preston on Estates*, 113; *Watk. on Conveyancing, p.* 63; *Williams on Executors*, 562.) The property in a pew being indeterminate as to its duration, that is, not limited by any definite space of time, and also issuing out of realty, it is therefore such an incorporeal hereditament as passes to the heir-at-law, and not to the personal representatives. It follows as a necessary consequence that the administrator cannot be held accountable for the value or the proceeds of the sale of the pew in question, but the creditors must take measures to have the property sold as a part of the real estate of the deceased, liable for the payment of his debts.