CHARLES FISKE, as Bishop Coadjutor and Ecclesiastical Authority, Acting as Bishop of the Diocese of Central New York, Respondent, *v.* ARTHUR H. BEATY and Others, Claiming to be the Rector, Church Wardens and Vestrymen of Grace Church, Cortland, New York, and Another, Appellants.

Third Department, September 19, 1923.

Corporations — religious corporations — action by acting bishop of Protestant Episcopal church of diocese of Central New York to restrain rector, church wardens and vestrymen of Protestant Episcopal Church from acting as such in Grace Church, Cortland, N. Y.— church as religious society and as religious corporation distinguished — rector as such is not officer of corporation and removal cannot be had in action by Attorney-General under Civil Practice Act, § 1208 — present action is not to test rector's title to corporate office — court of equity may restrain priest, who was not duly elected and instituted, from acting as rector and occupying rectory — fact that rector ceased to be vestryman does not deprive court of power to decree that he is not rector — court does not have power in this action to remove new church wardens and vestrymen on ground that they were not legally elected — Attorney-General may bring action under Civil Practice Act, § 1208, to test title of church wardens and vestrymen to office — Attorney-General cannot bring actions under sections 90 and 307 of General Corporation Law to remove church wardens and vestrymen for misconduct.

In an action by the bishop coadjutor and ecclesiastical authority of the Protestant Episcopal church acting as bishop of the diocese of Central New York to restrain the rector, church wardens and vestrymen of Grace Church of Cortland, N. Y., from acting as such in that church, it appears that in December, 1920, a majority of the church wardens and vestrymen applied to the bishop of the diocese, pursuant to canon 41 of the general canons of the Protestant Episcopal Church in the United States of America, for the dissolution of the pastoral relation between the rector and the church; that the bishop did not immediately take action on said application but later, acting upon information that the rector had committed offenses for which he was liable to be tried, appointed a committee pursuant to canon 23 to make an investigation and report whether in their opinion grounds existed for the presentment of the rector for trial; that the committee reported that grounds did not exist but recommended that the bishop acting under

canon 41 should dissolve the pastoral relation between the rector and the church on condition that the rector resign to take effect three months thereafter, and that before his resignation should take effect the vestrymen and wardens of the church should resign; that the bishop rendered his decision in accordance with said report; that the resignations were made as recommended; that after the resignations were handed in the rector called a meeting of the parish for the purpose of electing wardens and vestrymen to fill the vacancies to be created; that at that meeting 100 out of 144 votes were cast by women; that thereafter the new vestry, which was favorable to the rector, re-elected him to office but the vestry did not notify the bishop of its intention to re-elect the rector as provided by general canon 19, nor did it notify the bishop of a vacancy in the rectorship or await a certificate from him suggesting the names of one or more clergymen to fill the vacancy; that the bishop on being notified of the re-election of the rector refused to accept him as rector of the church and that notwithstanding the action of the bishop the rector continued to act as such for about two months after his re-election, when in an action brought by a member of the church congregation he was restrained from acting as rector, but he still continued to occupy the rectory and claimed to be the rector of the church.

*Held,* that a distinction must be made between Grace Church, a religious society, and Grace Church, a religious corporation. The religious society consists of a group of communicants of the Protestant Episcopal Church of the United States of America, who statedly attend divine service in the church edifice at Cortland, N. Y., known as Grace Church. The religious corporation consists of a group of persons within the congregation of Grace Church who are entitled to vote in the corporate elections held for the selection of church wardens and vestrymen. It is not necessary that the members of the corporation and all its trustees should be communicants of the Protestant Episcopal Church or members of the religious society of Grace Church. On the other hand, a member of the religious society is not necessarily a member of the corporation, for ordinarily the only persons entitled to vote are males of full age who are regular attendants and contributors.

The rector of Grace Church is not as such an officer of the corporation and an action cannot be maintained by the Attorney-General under section 1208 of the Civil Practice Act to test his title to office.

This action, brought to restrain the rector from acting in that capacity, is not an action to test his title to corporate office within the meaning of said section of the Civil Practice Act, and a court of equity has jurisdiction of the action.

It is contrary to the general canons of the Protestant Episcopal Church and the canons of the diocese of Central New York, in which Grace Church is situated, that the pulpit of an Episcopal church be occupied by a rector not duly elected and instituted or that its rectory should be possessed by him, and under such circumstances a court of equity may interfere at the instance of the bishop of the diocese and grant relief restraining a priest claiming to act as rector, who has not been properly elected and instituted, from so acting and from possessing the rectory.

The facts in this case establish that the rector was not duly elected and instituted by the action of the new vestry in re-electing him after his resignation, since the vestry did not comply with the canons of the Protestant Episcopal Church governing the election of a rector, and since the bishop refused to ratify the election made by the new vestry; the bishop is not required by section 3 of canon 19 of the general canons of the church to accept a rector merely because he is an ordained minister of the church, but may refuse to accept him when he is not satisfied with his general fitness to occupy the pulpit in question.

It is not material in this case that the rector may also have ceased to be a vestry-man, and, therefore, a trustee of the corporation when he resigned as rector, and this incidental result cannot deprive the court of the power to declare that the rector is not the rector of Grace Church.

A court of equity does not have jurisdiction of an action to test the title of the church wardens and vestrymen to their office in the church corporation, since the exclusive remedy is an action by the Attorney-General under section 1208 of the Civil Practice Act to test their title to the offices in question.

The Attorney-General, however, cannot proceed under sections 90 and 307 of the General Corporation Law to remove the vestrymen and church wardens from their office on the ground of a violation of their official duties, since section 300 of the General Corporation Law provides that section 90 thereof does not apply to a religious corporation.

APPEAL by the defendants, Arthur H. Beaty and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cortland on the 4th day of December, 1922, upon the decision of the court rendered after a trial at the Cortland Special Term. (See 120 Misc. Rep. 1.)

*Hinman, Howard & Kattell* [*Harvey D. Hinman* of counsel], for the appellants.

*Harold L. Hooker* [*Morse E. Ames* of counsel], for the respondent.

H. T. KELLOGG, Acting P. J.:

The plaintiff is bishop coadjutor of the Protestant Episcopal Church for the Diocese of Central New York. Prior to the beginning of this action he became the ecclesiastical authority of the diocese upon the written request of the bishop, made in pursuance of canon 17 of the general canons of the church. The defendant Beaty is an ordained priest of the Protestant Episcopal Church. He claims to be the rector of Grace Church of Cortland, N. Y., a church situate within the diocese over which the plaintiff has jurisdiction. The defendants Lowerre and Harvey claim to be the church wardens, while the remaining defendants claim to be the vestrymen of Grace Church. This action was brought to restrain the defendants from acting in the several capacities of rector, church wardens and vestrymen of Grace Church, and for other relief.

" The Rector, Church Wardens and Vestrymen of Grace Church of Cortland, N. Y.," is a religious corporation organized under the laws of this State. It has a rectory and church edifice at Cortland, N. Y. Religious services have been conducted in the church edifice, since the organization of the corporation, according to the rules and ritual of the Protestant Episcopal Church. The defendant Beaty was regularly called as the rector of Grace Church in September, 1918, and acted as such rector until June 2, 1921. In

December, 1920, a majority of the church wardens and vestrymen of the church applied to the bishop of the diocese for the dissolution of the pastoral relation between Beaty and Grace Church. The application was made pursuant to the provisions of canon 41 of the general canons of the Protestant Episcopal Church in the United States of America. That canon provides that no rector may be removed against his will by the vestry of any parish; that if the vestry desire a dissolution of the pastoral relation they may give notice thereof to the ecclesiastical authority of the diocese. The canon provides further as follows: " The Bishop, in case the difference be not settled by his godly judgment, or if he decline to consider the case without counsel, may ask the advice and consent of the Standing Committee of the Diocese or of the Council of Advice of the Missionary District, and, proceeding with its aid and counsel, shall be the ultimate arbiter and judge. * * *. The judgment shall be either that the pastoral relation between the parties shall cease and determine at a time and upon terms therein specified, or that the said relation shall not be terminated; and it shall be the duty of both parties to submit to and abide by such judgment." The bishop did not request the advice of the standing committee, nor did he immediately determine the case. In January, 1921, information came to him that Beaty had committed offenses for which he was liable to be tried. Thereupon, acting under canon 23 of his diocese, he appointed a committee of five to make an investigation and report whether in their opinion grounds existed for the presentment of Beaty for trial. The committee made an investigation, and upon March 1, 1921, reported that charges affecting the character and standing of Beaty were not sustained. It recommended, however, that the bishop, acting under general canon 39 (now 41) dissolve the pastoral relation between Beaty and Grace Church on the conditions (1) that the resignation of Beaty should not take effect for three months, and (2) that before it did take effect the vestrymen and wardens of Grace Church should resign. To the written report thus made the bishop attached his decision reading as follows: " I hereby render my decision, that in accordance with above report, the Rev. Arthur H. Beaty resign the rectorship of Grace Church, Cortland, N. Y., on June 2nd, 1921, subject to the conditions mentioned in the same report." In pursuance of this decision a meeting of the vestry of Grace Church was held on May 20, 1921, and at this meeting the written resignation of Beaty, to become effective on June second, was handed in and accepted. The resignations of the wardens and vestrymen, to become effective on June first, were also handed in. Thereafter Beaty called a meeting of the parish for the

purpose of electing wardens and vestrymen to fill the vacancies to be created. The meeting was held on May thirty-first, pursuant to the call. One hundred and forty-four votes were cast at the meeting, of which approximately 100 were cast by women. Two tickets were before the meeting, one for a new vestry favorable to Beaty and the other for the old vestry which was opposed to him. The new vestry received 109 votes and the old vestry 35 votes. The defendants other than Beaty claim to be church wardens and vestrymen through the favorable issue of this election. On June 1, 1921, the new vestry, which had apparently been elected, held a meeting at which it assumed to elect Beaty as rector of Grace Church for a period of six months. Notice of the election was immediately given to the bishop of the diocese who upon June eighth wrote the vestry declining to ratify the election. His letter in part read as follows: " I hereby notify you that I decline to ratify the election and refuse to accept him [Beaty] as Rector of Grace Church. My original decision was to ' dissolve the pastoral relation now existing between the Rev. Arthur H. Beaty and Grace Church, Cortland.' That decision still stands. To consent to the election of the same man would nullify it. I affirm my original decision, taking effect on June 2nd, and decline to consent to his re-election." Notwithstanding the notification thus given, the defendant Beaty continued to act as rector of Grace Church until some time in August, 1921, when, in an action brought by a member of the church congregation to restrain him from so acting, he was served with a temporary injunction forbidding it. Nevertheless he still occupies the rectory of the church and still claims to be its rector. The plaintiff now complains that the defendant Beaty is not the rector of Grace Church; that the other defendants are not the vestrymen and church wardens thereof; that the vestrymen have permitted a person other than a priest or lay reader to conduct services in the church; that they have failed to provide regular church services therein; that they have neglected to call a minister to fill the vacancy in the pastorate; that they have failed to defray the expenses of ministers designated from time to time by the plaintiff to conduct services therein; that the acts and omissions thus complained of were in violation of the canons and usages of the Protestant Episcopal Church; that the temporalities of Grace Church have thus been diverted from the spiritual uses to which by law they are devoted.

We must distinguish between Grace Church, the religious society, and Grace Church the religious corporation. The religious society consists of a group of communicants of the Protestant Episcopal

23

Church in the United States of America who statedly attend divine service in the church edifice at Cortland, N. Y., known as Grace Church. " The church consists of an indefinite number of persons, of one or both sexes, who have made a public profession of religion, and who are associated together by a covenant of church fellowship, for the purpose of celebrating the sacrament, and watching over the spiritual welfare of each other." (Per Chancellor WALWORTH in *Baptist Church in Hartford* v. *Witherell*, 3 Paige, 296.) " The visible church of Christ is a congregation of faithful men, in the which the pure Word of God is preached, and the Sacraments be duly administered according to Christ's Ordinance, in all those things that of necessity are requisite to the same." (Articles of Religion of the Protestant Episcopal Church, art. 19.) On the other hand, the religious corporation having the corporate name of " The Rector, Church Wardens and Vestrymen of Grace Church, Cortland, N. Y.," is an inanimate person, a legal entity, which possesses none other than strictly temporal powers. The members of the corporation are a group of persons within the congregation of Grace Church who are entitled to vote in the corporate elections held for the selection of church wardens and vestrymen. Except at such times they have no functions to perform as corporate members and are otherwise wholly inactive. The corporation owns the church edifice, the rectory and other temporalities of the church. The management of these temporalities is committed to the trustees of the corporation, consisting of the church vestry, which in turn is composed of the church wardens and vestrymen of the church together with the rector if there be one. (Religious Corp. Law, § 41.) " These officers are trustees in the same sense with the president and directors of a bank, or of a railroad company. They are the officers of the corporation to whom is delegated the power of managing its concerns for the common benefit of themselves and all other corporators." (Per SELDEN, J., in *Robertson* v. *Bullions*, 11 N. Y. 243.) It is not necessary that the members of the corporation and all its trustees should be communicants of the Protestant Episcopal Church, or members of the religious society of Grace Church. (Religious Corp. Law, § 43.) On the other hand, a member of the religious society is not necessarily a member of the corporation. Ordinarily the only persons entitled to vote are males of full age who are regular attendants and contributors. (Id. § 43.) This might exclude women and other persons who are members of the religious society. It is, therefore, clear that membership in the society and membership in the corporation are not one and the same thing. (*Baptist Church in Hartford* v. *Witherell, supra.*) The distinction thus noted between the religious

society and the religious corporation is commented upon by Chancellor WALWORTH in the case of *Lawyer* v. *Cipperly* (7 Paige, 281) as follows: " The statute, therefore, recognized three distinct classes or bodies as existing in the religious corporation, and defined their relative powers and duties: the church, or spiritual body, consisting of the office bearers and communicants; the congregation or electors, embracing all the stated hearers or attendants on divine worship who are competent to vote for trustees; and the trustees of the corporation, who have the control of all its temporalities, to be improved, used and managed by them for the benefit of all the stated hearers and the communicants, as far as is practicable." Chief Judge BARTLETT, in *Westminster Church* v. *Presbytery of N. Y.* (211 N. Y. 214) discriminates between the corporate church and the spiritual church as follows: " The law of the State of New York prescribing, as it has done ever since 1875, that the temporalities of a religious corporation shall be administered in accordance with denominational usage, contemplates the co-existence of a church in the spiritual sense and a church in the legal sense, working together toward the same beneficent ends. When, however, the superior governing body having authority over the ecclesiastical organization decrees its dissolution, there still remains the legal entity — that is to say, the trustees of the corporation are left in charge of its property, but without any spiritual body to maintain services or carry on religious work therein. The church as a legal corporate entity remains; the church in a spiritual sense is dissolved and gone."

The argument of the defendant Beaty is that he holds and exercises an office in a domestic corporation; that an action might be brought against him by the Attorney-General, under the provisions of section 1948 of the Code of Civil Procedure (Civ. Prac. Act, § 1208), to test his title thereto; that under well-settled principles of law such an action, being available, constitutes the exclusive remedy which may be had against him (*People ex rel. Corscadden* v. *Howe*, 177 N. Y. 499); that in consequence this action in equity does not lie. The Code and Civil Practice Act section authorizes the Attorney-General to bring certain actions, among which is an action " against a person who usurps, intrudes into or unlawfully holds or exercises within the State   *   *   *   an office in a domestic corporation." The vice of the argument lies in the assumption made that this is an action for the removal of Beaty from an office in a corporation. The vestry of the corporation of Grace Church may, " subject to the Canons of the Protestant Episcopal Church in the United States, and of the diocese in which the parish or church is situated," elect a rector to fill a vacancy in the rectorship

of the parish. (Religious Corp. Law, § 42.) The rector may be called, settled or dismissed, " not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected." (Id. § 25.) When a rector has been duly called and instituted he becomes by virtue of his rectorship a member of the vestry of the corporation and thus a member of its board of trustees who are the managing officers of the corporation. (Id. § 41.) Except that he becomes the presiding officer of the vestry and calls and presides over parish meetings (Id. § 42) his duties and powers as an officer of the corporation are no greater, no less, and no different than those of the vestrymen and the church wardens. It is not in the capacity of a vestryman, however, or in the capacity of a presiding officer of parish meetings, that the rector conducts divine service, administers the sacrament of Baptism and the Supper of the Lord, or performs the ceremony of marriage or other religious rites and ceremonies. He is not then a corporate officer, nor does he then administer to the corporate needs of a group of corporators. The ceremonies and rites are the ceremonies and rites of the spiritual society of the Protestant Episcopal Church, not of a corporation; the persons in whose presence or for whose benefit they are performed are assembled for spiritual not corporate purposes; the person who performs them is the advisor, guide and shepherd of a spiritual flock, not the manager of corporate properties. None of the powers which the rector exercises upon such occasions, indeed, none of his strictly rectorial powers, are conferred upon him by the corporation, by its vestry, or by its corporators. He is commissioned as a priest of the Protestant Episcopal Church by a bishop of that religious society, and without that commission he could not conduct services or administer the sacraments. It is a bishop who, with the laying on of hands, pronounces: " Take thou authority to execute the office of a Priest of the Church of God, now committed to thee by the Imposition of our hands * * *. Take thou authority to preach the Word of God, and to minister the holy Sacraments in the Congregation where thou shall be lawfully appointed thereunto." It is the bishop of a diocese who commissions a priest to a rectorship therein with these words: " We do by these Presents give and grant unto you, in whose Learning, Diligence, Sound Doctrine, and Prudence, we do fully confide, our License and Authority to perform the Office of Priest in the Parish of ————." The true doctrine of the Protestant Episcopal Church in America, in relation to the sources

of power of a priest or rector, as we understand it, is correctly expressed as follows: " In the Church, power does not *ascend* from the congregation or the vestry to the rector; it *descends* from above to the Bishop and through the Bishop to the subordinate ministry." (White's Church Law [ed. 1898], 185.) Our conclusion is that Beaty in his rectorial capacity is not an officer of the corporation of Grace Church, and that this action, brought to restrain him from acting in that capacity, is not an action to test his title to corporate office within the meaning of section 1948 of the Code of Civil Procedure or of section 1208 of the Civil Practice Act.

The trustees of every religious corporation are required to administer the church properties " in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or, providing the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object conducted by said corporation or in connection with it, or with the denomination, if any, with which it is connected; *and they shall not use such property or revenues for any other purpose or divert the same from such uses.*" (Religious Corp. Law, § 5.) A court of equity will interfere to restrain all uses of church properties not in accordance with the usages and rules of the religious society with which the corporation is connected. (*First Reformed Presbyterian Church* v. *Bowden,* 14 Abb. N. C. 356; *Isham* v. *Fullager,* Id. 363; *People ex rel. Peck* v. *Conley,* 42 Hun, 98; *Westminster Church* v. *Presbytery of N. Y.,* 211 N. Y. 214.) *Isham* v. *Fullager* (*supra*) was an action brought by members of a Presbyterian congregation to restrain a minister, who had been deposed from the ministry by a presbytery having jurisdiction, from acting as pastor, and to enjoin the trustees of the local church from maintaining him as such. It was held that the action was well brought and that an injunction should issue. *Westminster Church* v. *Presbytery of N. Y.* (*supra*) was an action of ejectment brought by an incorporated Presbyterian church to recover possession of church properties seized by the governing Presbytery which had attempted to dissolve the corporate as well as the spiritual local church. Chief Judge BARTLETT, writing for the court, therein used this language: " The Presbytery cannot oust them from office by dissolving the spiritual church. It may, however, by virtue of its control in ecclesiastical matters, insist that the trustees continue to administer the property for denominational purposes, and if they fail to do so, undoubtedly it would have a standing in a court of equity to enforce action on the part

of the trustees to that end." The religious society, in accordance with the usages and rules of which the property of this religious corporation must be administered, is the Protestant Episcopal Church in the United States of America. It is contrary to the general canons of that church and the canons of the diocese of Central New York, in which Grace Church is situated, that the pulpit of an Episcopal church be occupied by a rector not duly elected and instituted, or that its rectory should be possessed by him. If we have such an instance here then a court of equity should interfere, and no one could ask for interference with better grace than this plaintiff who is not alone a member of the religious society of the Protestant Episcopal Church but is as well the ecclesiastical authority of its diocese of Central New York.

We think that the facts and the law of the case establish that we have here such an instance. A committee named by the bishop to investigate charges against Beaty reported to the bishop that he should dissolve the pastoral relationship on condition that Beaty, the church wardens and vestrymen resign. The bishop rendered his decision that " in accordance with the above report " Beaty should resign the rectorship on June 2, 1921. This was in effect a decision dissolving the pastoral relationship. But whether this be so or not, Beaty did in fact file his resignation to take effect June 2, 1921, and the resignation was accepted by the vestry. Accordingly, Beaty, by his own voluntary act, unless re-elected, ended his rectorship upon that date. The vestrymen and church wardens also resigned and an election to fill their places occurred on May 31, 1921. The officers apparently elected upon that occasion held a meeting at which they assumed to elect Beaty to the rectorship, and thereupon notified the bishop of the diocese. The bishop within a few days notified the vestry that he refused to accept Beaty as rector of Grace Church. It is provided in section 3 of canon 19 of the general canons of the church that a written notice of the election of a rector shall be sent to the ecclesiastical authority of the diocese, and it is further provided therein as follows: " If the Ecclesiastical Authority be satisfied that the person so chosen is *a duly qualified Minister*, and that he has accepted the office, the notice shall be sent to the Secretary of the Convention, who shall record it. And such record shall be sufficient evidence of the relation between the Minister and the Parish." White, in his book on Church Law, says: " The term *qualified*, must, as Judge HOFFMAN maintains, receive a more comprehensive meaning than merely that he has been ordained; it must be taken to mean that the bishop is to be satisfied of the *general fitness* of the Minister elected, both morally

and intellectually, before he can be compelled to transmit the certificate to the Wardens, as to the election of such Minister, to the Secretary of the Convention for record, and thus complete such election to a Parish under his jurisdiction." This construction finds support in that office of the Church entitled " Office of Institution of Minister in a Parish or Church." The first rubric of the office provides " The Bishop having received due notice of the election of a minister into a parish or church as prescribed by the canon concerning the ' Election and Institution of Ministers ' and being satisfied that the person chosen is a ' qualified minister of this church,' may proceed to institute him into the Parish." The letter of institution is then set forth in the office. It is in this letter that the bishop gives " Our License and Authority to perform the office of a Priest in the Parish of ————." It will be noted that the bishop " may," not " must," institute the minister. It will also be noted that the license and authority conferred is the authority and license of the bishop and not an authority expressed to be derived from an election by a vestry. It would seem to follow that the election of a rector is not complete until ratified by the bishop of the diocese. It is also provided in general canon 19 as follows: " No election of a Rector shall be had until the name of the Clergyman whom it is proposed to elect has been made known to the Bishop, if there be one, and sufficient time, not exceeding thirty days, has been given to him to communicate with the Vestry thereon." No proposal to elect Beaty to the rectorship was in fact made known to the bishop. As an election could not be had without such notice it clearly follows that Beaty was never elected. Moreover, it is provided in canon 7 of the diocese of Central New York as follows: " Whenever a Church becomes vacant it shall be the duty of the Vestry to give immediate notice thereof to the Bishop. Upon the receipt of such notice the Bishop may, within ten days, certify to the Vestry the name or names of one or more Clergymen of this Church in his opinion well qualified to fill the vacant cure, and it shall be the duty of the Vestry to consider such nominations before extending a call to any other Clergyman." No such notice was given and no such certificate was made. A vestry is clearly required by this canon to give consideration to the nominees of the bishop before proceeding to the election of a rector. As this course was not pursued it is plain that the election was not canonical. For all these reasons we consider that Beaty was not re-elected to the rectorship, and that on June 2, 1921, he ceased to be the rector of Grace Church. It is not material that he may also have ceased to be a vestryman and therefore, a trustee of the corporation.

His rectorship did not end because his trusteeship ended. On the contrary, he ceased to be trustee, if at all, because he ceased to be rector. This incidental result could not deprive us of the power to declare that he is not the rector of Grace Church.

The argument that the Attorney-General may alone bring an action to test title to a corporate office, unsuccessfully advanced by Beaty, when made by his codefendants, is unanswerable. Each of them is a person who, lawfully or unlawfully, " holds or exercises " " an office in a domestic corporation." None of them claims to hold any other office or position. The case is not one where a court of equity, in its discretion, ought or ought not, because there is or is not a remedy at law, to withhold equitable interference. It is a case, rather, where a court of equity, because there is an exclusive legal remedy available to the Attorney-General whereby the title of the defendants other than Beaty may be tested, has no power or jurisdiction to grant equitable relief. (*People ex rel. Corscadden* v. *Howe, supra; Concord Society* v. *Stanton*, 38 Hun, 1.) We may not inquire, therefore, whether the election of church wardens and vestrymen, whereby the defendants other than Beaty claim to hold office, was, on account of the casting of votes thereat by women or otherwise, a legal or a void election. For all the purposes of this action they must now be regarded as the regularly constituted church wardens and vestrymen of Grace Church.

It is urged that, although this court may not have the power in this action to adjudge that the defendants were not elected to the corporate offices held by them, it nevertheless has the power to *remove* them from such offices for violation of their official duties. The only instance called to our attention in which such a power was asserted and exerted is found in the case of *Kniskern* v. *Lutheran Churches of St. John's and St. Peter's* (1 Sandf. Ch. 439). In that case Assistant Vice-Chancellor SAND-FORD removed from office the trustees of a religious corporation and directed that an election be held to fill their places. The case was commented upon by the Court of Appeals in *Robertson* v. *Bullions*, and disapproved. Judge SELDEN, writing for the court, there said: " This case is, in my judgment, in conflict with principle, and wholly unsustained by authority, in so far, at least, as it asserts the original power of the Court of Chancery to remove the trustees of a corporation regularly elected, in pursuance of the provisions of the statute, and to substitute upon a new election qualifications for electors defined by itself, instead of those prescribed by the statute." Judge ALLEN, in the same case, said: " The statute has prescribed the mode and manner of electing

officers of religious corporations, and the qualifications of electors; and officers duly elected, by properly qualified electors, cannot be removed from office, without, to some extent, disfranchising both the electors and the person chosen to office." The church wardens and vestrymen were elected for stated terms, the duration of which was fixed by statute. (Religious Corp. Law, § 43.) Certainly this court, without the sanction of a statute, has not the power to shorten their terms by removing them from office. Not only has no such sanction been given but the power of removal has been expressly denied to it. An action may be brought by the Attorney-General to remove from office for misconduct an officer of a corporation. (Gen. Corp. Law, §§ 90, 91.) The provisions of these sections do not apply to religious corporations. (Gen. Corp. Law, § 300.) The provisions of section 307 of the General Corporation Law, however, do apply. That section reads: " A trustee, director, or other officer of a corporation shall not be suspended or removed from office, by a court or judge, otherwise than by the final judgment of a competent court, in an action brought by the Attorney-General, as prescribed in section ninety of this chapter." Since section 90 does not apply to religious corporations it follows that no action may be brought by the Attorney-General or any other person for the removal of the officers of the corporation of Grace Church.

The decree should be modified by eliminating the provisions which declare that the election of church wardens and vestrymen was illegal; that certain of the defendants are not church wardens and vestrymen; that the elections of Davis to be treasurer and Stanley to be clerk were illegal; that they are not such officers; by eliminating the provisions enjoining the defendants other than Beaty from interfering with the temporalities of Grace Church, and from receiving and paying out funds, as well as the provision directing them to surrender possession of the money and properties of the church; by adding provisions, if the plaintiff be so advised, enjoining the defendants other than Beaty from suffering Beaty to conduct religious services in Grace Church; from suffering him to occupy the church rectory; from permitting the church properties to be otherwise used in violation of the rules and usages of the church; and as modified the decree should be affirmed, without costs.

Present — H. T. KELLOGG, Acting P. J., VAN KIRK, HINMAN and HASBROUCK, JJ.

Judgment modified as provided in the opinion, and as modified unanimously affirmed, without costs.