THE PEOPLE ex rel. ONONDAGA COUNTY SAVINGS BANK and THE COUNTY OF ONONDAGA, Appellants, *v.* JAMES BUTLER, County Clerk of Onondaga County, Respondent.

1. CONSTRUCTION OF STATUTES — INTENTION OF LAWMAKERS. In the construction of a statute, it is the intention of the lawmakers that is to govern, and that intention is to be gathered from the whole statute and sometimes from statutes *in pari materia;* and for the purpose of arriving at such intention, where there is a possible ambiguity in the phraseology of some portions of the statute, if regarded in connection with and with reference to some other portion thereof, it is sometimes competent to refer to the circumstances under which and the purpose for which a statute is passed.

2. ONONDAGA COUNTY CLERK — ACT MAKING THE OFFICE SALARIED — TIME OF TAKING EFFECT. Section 11 of chapter 520, Laws of 1893, passed May 2, 1893, entitled "An act to make the office of county clerk of Onondaga county a salaried office, and to provide for the management of said office, and to fix the salary of said clerk and deputies," reads as follows: "This act shall take effect on the first day of January, 1895." *Held*, that the intention of the legislature, as deduced from the whole act and from its obvious purpose of changing the compensation of the office from fees to a salary, and from the fact that the legislature knew at the time of its passage that the official term of the county clerk then in office would expire on December 31, 1894, was not that the actual existence of the statute should commence January 1, 1895, and that the clerk who would be elected after that date should be the first subject to its provisions, but that the intention was that the provisions of the act should take effect upon and apply to the clerk who was to take office on January 1, 1895.

*Held, also,* as a consequence of holding that the act took effect upon and was applicable to the clerk who came into office on January 1, 1895, that those provisions of the act which required action on the part of the board of supervisors before that date became operative in the fall of 1894.

*People ex rel. Savings Bank* v. *Butler* (85 Hun, 616), reversed.

(Argued June 13, 1895; decided October 8, 1895.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made February 5, 1895, which affirmed an order of the Special Term overruling relators' demurrer to the return to an alternative writ of mandamus and dismissing said writ.

This was a proceeding to compel defendant, the clerk of Onondaga county, to make and file a search and furnish the Onondaga County Savings Bank with a certified copy thereof at and for the compensation prescribed by chapter 520 of the Laws of 1893.

Further facts, so far as material, are stated in the opinion.

*William S. Andrews* and *B. J. Shove* for appellants. An act ordinarily speaks as of the time when it goes into effect, not as of the time when it was passed by the legislature. This rule is not an absolute one; it is to prevail only in the absence of anything showing a different intention. A different intention is shown by the circumstances under which the act in question was passed, and the language used therein. (Laws of 1893, chap. 520, §§ 7, 8, 10, 11; *State ex rel.* v. *Perrysburg,* 14 Ohio St. 472.)

*Charles E. Ide* and *William G. Tracy* for respondent. None of the provisions of chapter 520 of the Laws of 1893 apply to the clerk of Onondaga county, elected in November, 1894. The provision that the supervisors shall fix the salary of the clerk is an essential part of the act, and such construction must be placed upon the act as will give effect to this provision. (Laws of 1892, chap. 686, §§ 223, 230; Laws of 1892, chap. 304, § 2; Laws of 1885, chap. 502; Laws of 1886, chap. 195; Laws of 1887, chap. 392; Laws of 1890, chap. 547; Laws of 1891, chap. 281; Laws of 1892, chap. 590; Laws of 1894, chap. 422; Suth. on Stat. Const. § 107.) A

statute is to be construed as prospective unless its language is inconsistent with that interpretation. (Sutherland on Stat. Const. §§ 107, 206; Endlich on Interp. Stat. §§ 271, 272; *Dewart* v. *Purdy*, 29 Penn. St. 113; *Andrews* v. *R. R. Co.*, 16 Mo. App. 299; *Charless* v. *Lamberson*, 1 Iowa, 435; *People* v. *Judge*, 37 Mich. 287; *Jackman* v. *Inhabitants*, 64 Maine, 133; *Evansville* v. *Barbee*, 59 Ind. 592; 74 Ind. 169; *Gilkey* v. *Cook*, 60 Wis. 133; *Clark* v. *Lord*, 20 Kans. 390, 396; *Rice* v. *Ruddiman*, 10 Mich. 125; *Richards* v. *McBride*, L. R. [8 Q. B.] 119; *In re Howe*, 112 N. Y. 100; 48 Hun. 235; *Krom* v. *Levy*, 60 N. Y. 126; *In re Kemeys*, 56 Hun, 117; *Burns* v. *Carvalho*, 4 N. & M. 893; *Wheeler* v. *Chubbuck*, 16 Ill. 361; *Harding* v. *People*, 15 Pac. Rep. 727; *Andrews* v. *R. R. Co.*, 16 Mo. App. 299; *S. C. W. Co.* v. *Krom*, 74 Cal. 222; *People ex rel.* v. *Johnstone*, 6 Cal. 673; *Bd. Suprs.* v. *Keady*, 34 Ill. 293.) The intent and meaning of the act is to be determined from the language of the act itself. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; *F. A. Bank* v. *Colgate*, 120 N. Y. 394; *Rice* v. *Ruddiman*, 10 Mich. 125; *Jackson* v. *Lewis*, 17 Johns. 475; *McKuskie* v. *Hendrickson*, 128 N. Y. 558; *Newell* v. *People*, 7 N. Y. 97; *McCluskey* v. *Cromwell*, 11 N. Y. 602; Cooley on Const. Law, 68; *Karst* v. *Ganee*, 136 N. Y. 316; *In re Manning*, 71 Hun, 236.) Chapter 520 of the Laws of 1893 does not apply to the defendant because such construction of the act would violate the Constitution of this state. (*Mangam* v. *City of Brooklyn*, 98 N. Y. 585; *Roosevelt* v. *Godard*, 52 Barb. 533; *People ex rel.* v. *Albertson*, 55 N. Y. 50; Code Civ. Pro. § 3304; *People* v. *Rosenburg*, 138 N. Y. 410; *People* v. *Terry*, 108 N. Y. 1.)

PECKHAM, J.   The sole question in this case is whether the provisions of the act known as chapter 520 of the Laws of 1893, and entitled "An act to make the office of county clerk of Onondaga county a salaried office, and to provide for the management of said office, and to fix the salary of said clerk and deputies," apply to the county clerk whose term of office

commenced on the first day of January, 1895.  It would seem as if there ought not to be much difficulty in answering such a question.  And yet upon reading the whole act it can be seen that a strict and literal adherence to the very words of the text leaves it somewhat open to the construction that the act does not apply to the clerk whose term of office commenced on that day.  The cardinal rule in the interpretation of statutes is to arrive at and give effect to the intention of the legislative body which enacted them.  This intention is primarily to be deduced from the language used in the statute itself, and it has been said that where such language is clear and unambiguous there is no room for construction and that effect must be given to its plain and obvious meaning.  Language which, when separated from the rest of the act, is thus plain and unambiguous may, when read in connection with the whole act, be thereby rendered ambiguous and the necessity for construction become for that reason quite apparent.  Sometimes the language of some parts of a statute, when considered with reference to the ordinary meaning attributed to such language, is so clear and unambiguous that it would seem not to be open to any construction other than its plain, obvious meaning calls for, and yet, when read in connection with the whole act and in the light of what the real intention of the legislature must in the nature of things have been, the construction properly to be favored leads to a result which is different from what it otherwise would have been.  A notable instance of such a construction is to be found in the case of *Smith* v. *People* (47 N. Y. 330).  The act, chapter 137 of the Laws of 1870, by section 120, well and accurately described three preceding acts by their titles and the dates of their passage, and with other acts relating to the government of the city of New York, were in the language of that section " hereby repealed."  There was no qualification or limitation annexed to the repealing clause, and it was conceded that it was in terms sufficient to accomplish all that was claimed for it, and that literally interpreted it effectually abrogated the laws of 1853 and 1857, reorganizing the criminal

courts of the above-named city.   In the language used in section 120 of the act of 1870 there was nothing that could have been called ambiguous.   On the contrary, it was exceedingly plain, and it in terms repealed the prior statutes, and yet when the section was read in connection with the rest of the statute, and when the effect of a literal adherence to the strict meaning of the language used in that section was considered, it was held that such could not have been the intention of the legislature, for in that event all the proceedings in and the judgments of the two great criminal courts in New York city for two years would have been annulled, and the consequences would have seriously affected the public as well as individuals. It was accordingly held that, notwithstanding the general language used in the section repealing the former sections, it was not the intention of the legislature by the repealing clause to affect the organization of the criminal courts in the city of New York.   Words which are plain enough in their ordinary sense will not be given their ordinary meaning when such meaning involves an absurdity or inconsistency, or when it is repugnant to the clear intention of the legislature, to be collected from the whole act or from acts in *pari materia* to be construed with it, or from other legitimate sources of interpretation.   In such case the ordinary meaning will be modified or altered so as to avoid the absurdity, inconsistency or repugnance.   (*Miller* v. *Salomans,* 7 Exch. R. 546, cited in *Smith* v. *People, supra.*)

The reasons for the conclusion of the court in the *Smith* case are most admirably set forth, and the general rules for the construction of statutes are most clearly given in the opinion of the late Judge Allen.   The cases he cites and the illustrations of the principles of statutory construction he gives are abundant and satisfactory.   The case itself has always been regarded as an extreme illustration of the doctrine under consideration, and it is much farther than it is necessary for us to go.   We here simply follow out what, from a consideration of the whole act, is plainly evident was the intention of the legislature.

Another instance of the action of courts in the discharge of their difficult and delicate duty of construing statutes is to be found in the recent case of *Riggs* v. *Palmer* (115 N. Y. 506), where it was held that the legislature never could have intended that the statute of wills should apply in favor of one who was a devisee under a will, but who in order to prevent its revocation had murdered his devisor and testator. The legislature had not in terms made such an exception to the operation of the statute, and yet it was held that it was inconceivable that it could have intended such a result, and the doctrine and policy of the common law, that no one should be permitted to profit by his own fraud, were allowed full effect, notwithstanding the text of the statute there under consideration. These cases are not cited as being applicable in their facts to the case now before the court, but for the purpose of showing that it is the intention of the lawmakers that is to govern, and that intention is to be gathered from the whole statute and sometimes from statutes in *pari materia*, and that for the purpose of arriving at such intention, where there is a possible ambiguity in the phraseology of some portions of the statute if regarded in connection with and with reference to some other portion thereof, it is sometimes competent to refer to the circumstances under which and the purpose for which a statute is passed.

In the present case it appears that the term of the county clerk in office at the time the act in question was passed would not expire until the 31st of December, 1894. This fact must have been known to the legislature which enacted the statute in question. Of that there can be really no doubt.

It is equally clear that it was the intention of the legislature to change the manner of compensation of the clerk of Onondaga county from fees to a salary. This was the purpose of the act itself, expressed both in its title and in its body. The compensation by fees had become too great, and hence the proposed change. Aside from any constitutional objection to reducing the salary of a public officer like the county clerk during the term for which he had been elected, it is

22

obvious that there would be a seeming injustice in making such a change. The constitutional provision is itself founded upon such a plain fact. With this knowledge on the part of those composing the legislature of 1893, and yet intending to make a change in the method of compensation of the clerk of Onondaga county, the legislature enacts in 1893 the act, the title of which is above given. The act is somewhat lengthy, but it is perhaps as well to quote it. It reads as follows:

" Section 1. The clerk of the county of Onondaga next elected and thereafter to be elected or appointed shall receive as compensation for his services an annual salary to be fixed by the board of supervisors of said county, prior to the election of every such clerk; the salary so fixed shall be three thousand five hundred dollars per annum, and shall not be increased or diminished during the term for which said clerk shall have been elected.

" § 2. It shall be the duty of said clerk to perform all services which he is or shall be required or authorized by law to perform, by virtue of or by reason of his holding such office, for the state, for the county and for individuals, including his duty as clerk of every court of which he is or shall be clerk, and no compensation, payment or allowance shall be made to him for his own use for any such services except the salary aforesaid.

" § 3. All the fees, emoluments and perquisites which such clerk shall charge or receive, or which he shall legally be authorized, required or entitled to charge or receive, shall belong to the county of Onondaga. It shall be his duty to exact, collect and receive all such fees, emoluments and perquisites now permitted by law and not exceeding the amounts now fixed by law as from time to time shall be prescribed by resolution of the board of supervisors of said county at any annual session thereof, except that the charge of filing, entering or recording judgments, decrees, orders, deeds and mortgages shall be and remain the same as provided by statute; provided, however, that any resolution thus passed by said board of supervisors shall be general in its character, establish-

1895.]   People ex rel. Savings Bank *v.* Butler.   **171**

N. Y. Rep.]   Opinion of the Court, per Peckham, J.

ing a uniform rate of charges, and no resolution changing the fees to be charged shall be passed except at the regular annual session after the adoption of the resolution prescribing the same after the passage of this act. No fee shall be charged by such clerk or assistants for any service rendered to soldiers or sailors, or the widows, minor children or dependent relations of deceased soldiers, for taking any affidavit or acknowledgment or the vouchers for the payment of pensions, or application for pensions of any soldier or sailor, or the widow, minor children and dependent relations of deceased soldiers, or certifying as to the official character of any officer on any such paper relating to pensions. Said clerk shall require payment in advance for recording all papers left with him for record, and shall also, in each case, require payment for all other service rendered by him or his assistants in his or their official capacity by virtue of any law of this state or by order of the board of supervisors of said county. It shall be the duty of said clerk to make and certify all abstracts of title to, and incumbrances upon, real property for which he shall receive as compensation for each year for which the search is made for each name and each kind of conveyance or lien three and one-half cents. He shall also furnish and deliver the person ordering such abstract of title a certified copy thereof free of charge, and such original abstract shall be kept on file by him in his office as a part of the records thereof, and certified copies thereof shall thereafter be furnished by said clerk to any person or persons ordering the same, at ten cents per folio.

"§ 4. In a proper book or books, to be provided at the expense of said county, such clerk shall keep an exact and true account of all official services performed by him or his assistants, and of all fees, perquisites and emoluments received or chargeable by him or them pursuant to law. Such book or books shall constitute a part of the records of said office, and shall at all times during office hours be open to the inspection, without fee or charge therefor, of all persons desiring to examine the same.

" § 5. Such clerk shall make a full and true statement for each calendar month of all moneys received each day by him or his assistants for fees, perquisites and emoluments for· all services rendered by him or them in his or their official capacity, and shall transmit such statement to the county treasurer of said county within five days after the expiration thereof. Such statement shall specify in the following order the amounts so received for the calendar month : For recording deeds, for recording mortgages, for recording other documents and papers, for docketing judgments and canceling dockets, for searches and certificates thereof, for copies and exemplifications of papers and records, for filing papers and for all services, and shall also show the total receipts for said month. Each such statement shall have attached thereto an affidavit of said county clerk in effect that the same is in all respects a full and true statement as herein required.

" § 6. At the time of rendering any such statement such clerk shall pay over to the treasurer of the county of Onondaga for the benefit of said county the whole amount of money so received by him since making the last preceding monthly statement.

" § 7. Every county clerk elected or appointed in said county shall, before entering upon the duties of said office, execute to the people of this state, and file with the county treasurer of said county a bond in such penal sum, and with such sureties as shall be fixed and prescribed by the board of supervisors of said county. Such bond shall be conditioned that said county clerk shall well and faithfully discharge all the duties of his office, and all trusts imposed on him by law or by virtue of his office, and shall safely keep and pay over to the said county treasurer as . herein provided all moneys which shall come into his hands. Said bond shall be approved as to its form and sufficiency of sureties by the board of supervisors, and if any such clerk shall neglect for thirty days to execute or file such bond, according to the provisions of this act, his office shall thereupon become vacant.

" § 8. There shall be one deputy clerk, and the board of

supervisors shall have the power to designate the number of special deputy clerks, and said county clerk shall appoint such deputy and such number of special deputies as so designated by said board; also as many assistants as may be necessary for the faithful discharge of the duties of his office, and shall be responsible for their official acts, and the salaries of said clerks and assistants shall be paid in the same manner as the salaries of other county officers are paid. The salary of the deputy clerk shall not exceed one thousand five hundred dollars per annum, and of the first special deputy clerk shall not exceed one thousand two hundred dollars per annum, and of each additional special deputy clerk. not to exceed nine hundred dollars per annum; and the board of supervisors may determine the number of assistants and fix their salary or compensation; provided, however, that all work done by such assistants may be done and paid for by the piece or folio, at the discretion of the clerk, and the amount of work so performed shall be certified to by the county clerk for each calendar month.

"§ 9. Any officer referred to in this act, who shall receive to his own use, or neglect to account for any fees, perquisites or emoluments, by this act declared to belong to and be for the benefit of the county of Onondaga, or who shall neglect to render to the said county treasurer an account of all fees received at his office, or to pay over the same, as herein required, shall be deemed guilty of misdemeanor, and on conviction shall be punished by fine or imprisonment, or both, at the discretion of the court before whom said officer may be convicted, and shall be liable to said county in a civil action for all moneys so received and not accounted for.

"§ 10. All acts and parts of acts inconsistent herewith are hereby repealed.

"§ 11. This act shall take effect on the first day of January, eighteen hundred and ninety-five."

A perusal of this act, having in mind the fact above stated as to the time of the termination of the official term of the clerk in office at the time it was passed (May 2, 1893) leaves,

no doubt in our minds as to the actual intention of the legislature. The clerk intended to be affected by it was the clerk who would be elected in the fall of the year 1894, and who would take office on the first of January, 1895. We are at a loss to ourselves imagine any reason, and none at all adequate has been suggested to us, for the intentional postponement of this alteration of the manner of compensation until January, 1898. Such postponement would be the result if the act really designated the clerk who should be elected after 1895 as the first one to be subject to its provisions. To be sure the clerk commencing his official term in 1895 might die while in office and his successor might be elected prior to 1897, in which case the act would apply to him, but in the regular course of events, by the construction asked for by the defendant, the legislature was engaged in the enactment of a statute in May, 1893, which would not come into actual effect until January 1, 1898, and by which the full term of a county clerk to be elected a year and a half after its passage was to elapse totally unaffected by the provisions of such act. This is a manifest absurdity. No ingenuity can suggest a reasonable explanation for such an extraordinary intention on the part of the legislature. We cannot attribute any such intention to that body. And yet it is claimed that just this intention is made manifest, plain, unambiguous and controlling by the language of the eleventh section, which provides that the act shall take effect on the first day of January, 1895. The argument is that it is only from the first day of January, 1895, that the act can be said to speak, and that it is to be regarded in the same light as if it had been enacted on that day with a section ordaining that it should take effect immediately. As a general rule an act of the legislature speaks for the future and as of the time when it takes effect and not as of the time it was passed. The question is always, however, what meaning is to be attached to the language which provides in a general way for an act to take effect at some future time. The phrase " This act shall take effect on the first day of January, 1895," standing alone is plain and unambiguous. So is

the phrase " Chapter 217 of the Laws of 1853, and chapter 446 of the Laws of 1857 are hereby repealed." Yet this court held that all portions of those laws were not repealed because it was manifest the legislature did not so intend. Looking at the eleventh section of this act before us, after reading the whole act and being possessed with the knowledge which the legislature had as to the expiration of the official term of the then county clerk, and we can come only to one conclusion as to the meaning of the section. The legislature did not mean that the actual birth and existence of the statute should commence in January, 1895, and that the clerk who would be thereafter elected should be the first subject of its provisions. By the expression used the enacting body plainly meant that the provisions of the act that was passed by it should apply to, govern and take effect upon the clerk who was to take office on the first day of January, 1895. This is too clear for any serious controversy, and we are but carrying out the plain intention of the legislature when we attribute this meaning to the language used.

It is easily capable of such meaning, and regarding the facts already stated and within the knowledge of the legislature, it is the meaning which that body undoubtedly attached to it, and it is called for by every rule of common sense. To hold otherwise would be to do violence to the plain legislative intent to be gathered from the whole act, and we should be controlled by a strict, technical and narrow construction of the language of the last section, not at all necessary in this case, the effect of which would be to thwart instead of to carry out the legislative purpose.

The counsel for the defendant cites many cases in the very learned brief he has submitted to us, in which it has been held that the legislature, in the particular acts in question, referred to periods subsequent to the times when the acts took effect, instead of subsequent to their passage. We think we should agree with the learned courts which decided them in most of the cases. This is because, we think, the legislative intent was thereby carried into effect. In this case we do but give a

reasonable meaning and effect to the phrase contained in the eleventh section, and in that way we carry out what we have not the slightest doubt was the legislative purpose. No other reasonable conclusion could be arrived at. We cannot impute an unreasonable or absurd purpose to the legislature.

The case in this court (*In re Howe, Deceased*, 112 N. Y. 100) is not at all in conflict with the views we have herein expressed. The act there in question contained within its body no reason whatever for its earlier application, and it took effect by virtue of the general provisions of our statute as to the acts of the legislature. A death happening before it took effect, although after its passage, was held not to render the estate passing under the will of the decedent liable to the provisions of such act. By holding that the act in question took effect upon and was applicable to the clerk who came into office on the 1st of January, 1895, we necessarily hold that those provisions of the act which required action on the part of the board of supervisors before that date became operative in the fall of 1894. The board of supervisors should, therefore, have met and fixed the salary of the clerk before his election. It did not do so until after his election, but before the commencement of his term of office. In December, 1894, it fixed the salary and otherwise provided for the number of deputies, etc., as mentioned in the act. The fixing of the salary, so far as defendant is concerned, by the board, is matter of the purest formality, for the statute itself provides what sum the board shall fix upon. Whether the board has or has not complied with the provisions of the act, cannot, however, affect this court upon the question of the proper construction to be given to the act itself.

For the reasons stated, we think the orders of the courts below should be reversed, the demurrer of the relators sustained and judgment ordered for them, granting a peremptory writ of mandamus as prayed for, with costs against defendant in all courts.

All concur, except ANDREWS, Ch. J., not voting.

Judgment accordingly.