RECTOR, CHURCHWARDENS AND VESTRYMEN OF THE CHURCH OF THE HOLY TRINITY et al., Appellants, v. WILLIAM H. MELISH et al., Respondents.

Second Department, June 24, 1957.

*George L. Hubbell, Jr.*, and *Edward J. Walsh, Jr.*, for appellants.

*Raphael H. Weissman, Hubert T. Delany* and *Bernard Reswick* for respondents.

*Hunter L. Delatour* and *Jackson A. Dykman* for Right Reverend James P. De Wolfe, *amicus curiæ*.

WENZEL, J. Plaintiff the Rector, Churchwardens and Vestrymen of the Church of the Holy Trinity, Brooklyn, New York, hereinafter referred to as the Parish, is an incorporated Protestant Episcopal Church, is a subordinate member of the Protestant Episcopal Church in the United States of America, hereinafter referred to as the General Church, and, as such member, is under the jurisdiction of the General Church Diocese of Long Island in the State of New York, hereinafter referred to as the Diocese. Plaintiff Herman S. Sidener and defendant William Howard Melish are ordained priests of the General Church. The three other defendants are vestrymen of the Parish.

Plaintiffs alleged in their supplemental complaint (1) that Dr. Sidener was elected rector of the Parish, which position had been vacant, (2) that his election was canonically "finalized", (3) that the employment of Mr. Melish as assistant minister of the Parish was terminated, all in February, 1956, (4) that nevertheless Mr. Melish refused to surrender the Parish register and keys to Dr. Sidener and the two churchwardens of the Parish, and (5) that the defendant vestrymen have aided and abetted Mr. Melish's efforts to control the worship and spiritual jurisdiction of the Parish and its appurtenances and furniture and have unlawfully interfered with the property, funds and management of the Parish. Upon these allegations, they sought a judgment declaring the rights and legal relations of the parties and granting injunctive relief.

In a dispute between contending factions of a church society, courts have no jurisdiction unless civil or property rights are involved, and may inquire into ecclesiastical or doctrinal questions " only insofar as it may be necessary to do so to determine the civil or property rights of the parties. The civil courts do not interfere with ecclesiastical matters in which temporal rights are not involved " (*Cadman Mem. Cong. Soc. of Brooklyn* v. *Kenyon*, 279 App. Div. 1015, 1074, 1075, affd. 306 N. Y. 151; see, also, *Watson* v. *Jones*, 13 Wall. [U. S.] 679, 718, 733; *Kedroff* v. *St. Nicholas Cathedral*, 344 U. S. 94, 110–116, 120–121; *Baxter* v. *McDonnell*, 155 N. Y. 83, 100–102; *Connitt* v. *Reformed Prot. Dutch Church of New Prospect*, 54 N. Y. 551,

560–563; *Stallings* v. *Finney*, 287 Ill. 145, 148; *Mendelsohn* v. *Gordon*, 156 S. W. 1149, 1151 [Tex.]).

Although the matter of selecting a clergyman for a church is ecclesiastical, it is within the province of the court to determine a dispute as to a given selection where, as here, questions of control and management of temporalities will be settled by the determination of such disputed ecclesiastical matter (see *Kedroff* v. *St. Nicholas Cathedral, supra,* pp. 115–116, 120–121, 122; *Fiske* v. *Beaty,* 206 App. Div. 349, affd. 238 N. Y. 598).

It is undisputed that plaintiffs' proof at the trial established that Dr. Sidener became the rector of the Parish as a result of (1) action taken at meetings of the Parish vestry, (2) the statement by the Bishop of the Diocese that he was satisfied that Dr. Sidener was a duly qualified minister, (3) Dr. Sidener's acceptance, (4) the recording of the election by the secretary of the Diocese, all in February, 1956, and (5) Dr. Sidener's institution as rector thereafter on March 5, 1956 by the Bishop, and further established that Mr. Melish was discharged at another meeting of the vestry on February 14, 1956, subject to a question of law, namely, whether the action taken at the said meetings of the vestry was invalid by reason of the absence of a quorum.

Defendants have contended that section 42 of the Religious Corporations Law and, more specifically, numbered subdivision 2 thereof, governs as to what constitutes a quorum for a meeting of the Parish vestry and that, by virtue of the provisions therein a quorum was not present at the said meetings. The section is part of article 3 of that law, which article deals with and is entitled "Protestant Episcopal Parishes Or Churches".

The learned Official Referee was of the opinion that the issue was governed by the Canons of the General Church and those of the Diocese and also by the said provisions in the State statute, that according to the provisions of the State statute a quorum was not present, and that no evidence was offered which would permit a finding that the canons had provisions different from those of the State statute. He accordingly determined this controversy in favor of the defendants.

A controversy concerning an ecclesiastical matter may not be determined upon the authority of a civil statute. If indeed the civil statute must be read as intending to govern as to the subject ecclesiastical matter, it would be unconstitutional. As was stated by Mr. Jusice REED in the majority opinion in *Kedroff* v. *St. Nicholas Cathedral* (344 U. S. 94, 107–108, 116, *supra*): "Legislation that regulates * * * the appointment of

clergy '' would be violative of the Fourteenth Amendment of the Constitution of the United States in that it would attempt to dictate in matters of religion, and this is so even though the statute requires conformity to church '' ' faith, doctrine, ritual, communion, discipline, canon law, traditions and usages of the ' '' church, for such conformity would be '' by legislative fiat and subject to legislative will. Should the state assert power to change the statute requiring conformity to ancient faith and doctrine to one establishing a different doctrine, the invalidity would be unmistakable '', and '' Freedom to select the clergy, where no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as a part of the free exercise of religion against state interference.''

Accordingly, we must look to the laws of the Protestant Episcopal Church. Canon 13 of the Canons of the General Church, which canons shall hereinafter be referred to as the General Canons, is entitled '' Of Parish Vestries '' and provides that '' In every Parish of this Church the number, mode of election, and term of office of Wardens and Vestrymen * * * shall be such as the State or Diocesan law may permit or require ''; that '' Except as provided by the law of the State or of the Diocese, the Vestry shall be agents and legal representatives of the Parish in all matters concerning its corporate property and the relations of the Parish to its Clergy '', and that '' Unless it conflict with the law as aforesaid, the Rector, when present, shall preside in all the meetings of the Vestry.''

Sections 40 and 41 of the Religious Corporations Law permit the incorporation of a Protestant Episcopal parish or congregation. Section 40 further provides that there shall be two churchwardens of such corporation and such number of vestrymen as shall have been determined at the meeting of the parish or congregation at which it was decided that the parish or congregation be incorporated. Section 41 further provides that '' the churchwardens and vestrymen * * * together with the rector, when there is one, shall form a vestry and shall be the trustees of such church or congregation ''. In the Parish with which we are concerned in this controversy, the number of vestrymen was fixed at nine. Trustees, by virtue of section 5 of the statute, '' have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom ''.

Although the rector thus is an official of the corporation, he nevertheless functions primarily and principally as an ecclesiastic. As was said in *Fiske* v. *Beaty* (206 App. Div. 349, 356–

357, *supra*), a rector " in his rectorial capacity is not an officer of the corporation "; " none of his strictly rectorial powers are conferred upon him by the corporation, by its vestry, or by its corporators " and " ' In the [Protestant Episcopal] Church, power does not *ascend* from the congregation or the vestry to the rector; it *descends* from above to the Bishop and through the Bishop to the subordinate ministry.' (White's Church Law [ed. 1898], 185.) "

Having indicated hereinabove that civil legislation which purports to regulate ecclesiastical matters would be unconstitutional, it behooves us at this time, in view of our reference to sections 40 and 41 of the Religious Corporations Law and the further references which we shall make to other provisions in that law, to advert to the subject of what the true purpose of the Religious Corporations Law of this State is. As to this, we can do no better than to quote from the majority opinion by CONWAY, J. (now Ch. J.), in the *Kedroff* case when that case was before the New York Court of Appeals (*St. Nicholas Cathedral of Russian Orthodox Church in North America* v. *Kedroff,* 302 N. Y. 1, 29): " The primary purpose of the Religious Corporations Law is to provide for an orderly method for the administration of the property and temporalities dedicated to the use of religious groups and to preserve them from exploitation by those who might divert them from the true beneficiaries of the trust."

Despite their dealing with the ecclesiastical office of rector, sections 40 and 41 should be read, therefore, as should all sections of the statute which refer to ecclesiastical matters, as intending to deal only with methods " for the administration of the property and temporalities " of religious groups.

As to duties and powers of the vestry insofar as they relate to filling a vacancy in the position of rector, we find pertinent provisions in General Canon 47, which canon is entitled " Of the Filling of Vacant Cures ". It provides that " When a Parish or Congregation becomes vacant the Churchwardens or other proper officers shall notify the fact to the Bishop " (§ 1), that there shall be no election of a rector until the name of the proposed candidate has been given to the Bishop and the Bishop has been given not more than 30 days " to communicate with the Vestry thereon ", and until such communication, if made, " has been considered by the Parish or Vestry at a meeting duly called and held for that purpose " (§ 2), and that " Written notice of the election, signed by the Churchwardens, shall be sent to the Ecclesiastical Authority of the Diocese. If the Ecclesiastical Authority be satisfied that the

person so chosen is a duly qualified Minister, and that he has accepted the office, the notice shall be sent to the Secretary of the Convention, who shall record it. And such record shall be sufficient evidence of the relation between the Minister and the Parish." (§ 3.)

Canon 23 of the Canons of the Diocese, which canons shall hereinafter be referred to as the Diocesan Canons, is consistent with, and implements, General Canon 47. It states that the duty to notify the ecclesiastical authority of a vacancy in a parish is that of the vestry (§ I), that respective meetings of the vestry shall be held for the purpose of selecting a candidate to be proposed to the ecclesiastical authority and for the purpose of electing a rector (§§ II, III), and that, after the election and presentation of the elected rector to the ecclesiastical authority by certificate of the churchwardens, "The Ecclesiastical Authority being satisfied that the person so chosen is a duly qualified presbyter, and that he has accepted the office, shall send the instrument of presentation to the secretary of the convention who shall record it" (§§ IV, V).

As to the canonical provisions with respect to quorums for meetings, we turn to General Canon 11, which canon is entitled "Of Standing Committees". Parenthetically, it might be noted that the function of the standing committee of a diocese is to advise the Bishop (§ 1) and, under certain circumstances, the standing committee may temporarily become the ecclesiastical authority (§ 3). The provisions as to quorum constitute section 2 of this canon, which section reads as follows: "In all cases in which a Canon of the General Convention directs a duty to be performed, or a power to be exercised, by a Standing Committee, or by the Clerical members thereof, or by any other body consisting of several members, a majority of said members, the whole having been duly cited to meet, shall be a quorum; and a majority of the quorum so convened shall be competent to act, unless the contrary is expressly required by the Canon."

We have heretofore referred to the meetings at which action was taken with reference to Dr. Sidener's election. More specifically, the meetings were held on February 6 and 7, 1956. At the first of these two meetings it was resolved to propose to the Bishop the election of Dr. Sidener. At the second of these meetings it was resolved that Dr. Sidener "be and he hereby is elected Rector". At both meetings the two wardens and only four vestrymen were present. The three vestrymen who are defendants in this action were absent and the remaining two offices of vestrymen were vacant. Respective approvals

by the Bishop followed each of these meetings, that is, of the proposal and of the election. Dr. Sidener himself accepted the call and the secretary of the Diocese recorded the fact of the election.

At the meeting of February 14, 1956, at which it was resolved that Mr. Melish's services were terminated, there were in attendance the two wardens and the same four vestrymen who had attended the two earlier meetings, Dr. Sidener as rector, and two other persons who were purportedly elected to the vacant positions of vestrymen early in the meeting. Thereafter, the standing committee recommended to the Bishop that he institute Dr. Sidener as rector, that is, confer ecclesiastical power upon Dr. Sidener as rector of the Parish. The procedure and service for such institution is set forth in a rubric in the Book of Common Prayer (p. 569 *et seq.*), of which the Official Referee took judicial notice. Presence of the Bishop or a priest appointed by him as institutor, attended by the new incumbent and the other clergy present, and presence of members of the vestry are contemplated. The Bishop or the appointed institutor is required, among other things, to ask if anyone present can show just cause why the new incumbent may not be instituted and, if objection be then offered, he " shall judge whether it afford just cause to suspend the Service " and determine whether " to go on with the Service ".

On March 5, 1956 the institution took place. In accordance with the said rubric the Bishop asked if there were objections. Three persons voiced objection, generally on the ground presented in this action and on the ground of the pendency of, and the proceedings in, this action. Of these three persons, two were vestrymen who are defendants in this action and the third was the attorney for Mr. Melish. The Bishop overruled the objections, stating that he was " acting under the Canons of the Church and not under a corporation law. Under the Canons of this Church, Dr. Sidener has been duly and properly elected. * * * There are two matters that are required by the Canon; one is to the election of the Rector and the other is to his worthiness. * * * It is therefore my solemn judgment that there is no valid objection, either Canonical or otherwise, to the institution of The Reverend Herman S. Sidener, S.T.D. and I will therefore proceed with the office of the institution."

When there is before a civil court for determination a dispute between factions of a religious congregation concerning an ecclesiastical matter and the congregation in question is a subordinate member or part of a general church organiza-

tion "in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization", the weight of authority in this country, contrary to the rule in English courts, is that "whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them" (*Watson v. Jones*, 13 Wall. [U. S.] 679, 722–723, 727, *supra*; *St. Nicholas Cathedral of Russian Orthodox Church in North America v. Kedroff*, 302 N. Y. 1, 13, revd. on other grounds *sub nom. Kedroff v. St. Nicholas Cathedral*, 344 U. S. 94, *supra*; *Trustees of Presbytery v. Westminster Church*, 222 N. Y. 305, 315; *Rector, Church Wardens and Vestrymen of Church of Holy Trinity in City of Brooklyn v. Melish*, 194 Misc. 1006, 1017, affd. 276 App. Div. 1088). This rule of comity was justified in *Watson v. Jones, supra*, p. 729, as follows: "Each of these large and influential bodies (to mention no others, let reference be had to the Protestant Episcopal, the Methodist Episcopal, and the Presbyterian churches), has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collection of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own. It would therefore be an appeal from the more learned tribunal in the law which should decide the case, to one which is less so."

In our opinion, the pronouncement by the Bishop at the institution of Dr. Sidener constituted an ecclesiastical decision which could have been asserted successfully by plaintiffs in this action as having binding effect upon the court. The fact of the decision was not pleaded in the supplemental complaint and therefore, even though it was proved at the trial, it may not be considered as determinative of the issue of Dr. Sidener's election. A judgment should be *secundum allegata et probata*. "Any substantial departure from this rule is sure to produce surprise, confusion and injustice." (*Lamphere v. Lang*, 213 N. Y. 585, 588.) A plaintiff "must bring his case within the allegations as well as within the proof" (*Stevens v. Mayor, Aldermen & Commonalty of City of N. Y.*, 84 N. Y. 296, 305).

There are permissible exceptions to the rule, namely, where proof of the unpleaded fact in question was given at the trial without objection and the trial court ordered the pleadings conformed to the proof, or where in fact the real issue which was actually tried embraced such unpleaded fact (*Romeyn* v. *Sickles,* 108 N. Y. 650, 653; see *Gorham* v. *Arons,* 306 N. Y. 782). In the instant case it was never indicated at any time during the trial that plaintiffs relied on the Bishop's pronouncement as binding on the court, no motion to conform the pleadings to the proof was made, and it does not appear that the Official Referee gave any consideration to that theory. We note parenthetically that, although generally an appellate court itself may amend the pleadings to conform to the proof only for the purpose of affirming a judgment and not in order to reverse one (*Volkening* v. *De Graaf,* 81 N. Y. 268, 272; *Amherst Coll.* v. *Ritch,* 151 N. Y. 282, 337; *McCaddon* v. *Central Trust Co. of N. Y.,* 229 N. Y. 560, affg. 182 App. Div. 846), it may order such amendment for either purpose where the proved but unpleaded facts were involved in the real issue which was tried (*Gorham* v. *Arons, supra*), but, as stated above, the Bishop's pronouncement was not presented at the trial as a determinative factor in the case.

However, we reach the same conclusion as did the Bishop. In our opinion, section 2 of General Canon 11, hereinabove quoted, governs as to the matter of a quorum at the meetings of the vestry with regard to the election of a rector. By its own terms, it is applicable to '' all cases in which a Canon of the General Convention directs a duty to be performed, or a power to be exercised, by * * * or by any other body consisting of several members ''. The phrase '' by any other body consisting of several members '' has an extensive cannotatation. We do not see how it may reasonably be said that a body in the church, such as the vestry, is not within it. We do not believe that the general convention, in adopting section 2 of General Canon 11, was not conscious of the fact that the vestry at least might be regarded as within the embrace of this broad phrase. The vestry is too important a body in the church to have been overlooked in this connection. It is the governing body of the parish as to its temporalities and it has an important place ecclesiastically as well, viz., in the election of a rector. The canons make no separate or other provision as to the quorum of a vestry. Under the circumstances we believe that, had the intention been to exclude the vestry from the phrase, such intention would have been expressed.

The fact that General Canon 11 is entitled " Of Standing Committees ", and that much of it is concerned with such committees in every diocese, does not require a contrary construction of section 2 thereof. The fact is that this canon does contain further express provisions dealing with other functionaries in the church, besides those generally contemplated by the said phrase " any other body ". If the intention were to limit applicability of the provisions of the canon to standing committees, the express inclusion of those other functonaries and of " any other body " would defy reasonable understanding.

Although we have reached this view independently of reference to any civil statute, we find support therefor in section 25 of the Religious Corporations Law. That section is a part of article 2 of that statute, which article is entitled " General Provisions ". It states that " No provision of this chapter [the Religious Corporations Law] authorizes the calling, settlement, * * * of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed * * * not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected." This is a legislative interdiction against viewing the quorum provisions of section 42 as applicable to meetings held for the election of a rector.

It does not follow from our view of the subject provisions of section 42 that they have no useful purpose. They are applicable to all meetings of the vestry insofar as they do not deal with purely ecclesiastical matters. In so construing section 42 we give heed not only to the principle that the court must " assume that every provision of the statute was intended to serve some useful purpose " (*Allen* v. *Stevens,* 161 N. Y. 122, 145), but also to the principles that in doing so the court should " aim to reconcile apparent contradictions " (*Hoey* v. *Gilroy,* 129 N. Y. 132, 137), should so far qualify the sections of a statute by each other as to give all of them " operation in harmony ", if possible, should subserve each " to the general intent of the whole enactment" (*Ansonia Brass & Copper Co.* v. *New Lamp-chimney Co.,* 53 N. Y. 123, 125), and should, " in construing a statute which is reasonably susceptible of two constructions, one of which would render it unconstitutional, and the other valid, * * * adopt that construction which saves its constitutionality " (*Matthews* v. *Matthews,* 240 N. Y. 28, 35).

It is true that the last sentence of section 42 essays to enter the ecclesiastical field, in that it states that the vestry may by a majority vote elect a rector and fix his salary or compensation, and it may be that no useful purpose can be ascribed to this particular part of the section because it deals only with an ecclesiastical matter. However, that does not prevent our finding a useful purpose for the quorum provisions of this section and our construing those provisions as we have done. Parenthetically, it might be noted that the said last sentence of section 42 nevertheless does expressly bow to the church law. It further states that its said provisions are '' subject to the canons '' of the General Church and the Diocese.

Although we have concluded that reversal may not be grounded on the Bishop's pronouncement that Dr. Sidener was properly elected, we may regard the pronouncement as evidence of what the church law is in a situation such as this in the same manner that evidence of the law of another jurisdiction is accepted. As evidence it fortifies our independent conclusion that the church law required a quorum of only a majority of the vestry. (If section 42 of the Religious Corporations Law were applicable, its subdivision number 2, as construed by the learned Official Referee, would require the presence of at least a majority of the vestrymen, namely five, in addition to the two churchwardens who were present.)

Since 6 of the 11 members of the vestry were present at the meetings in question, that is, two churchwardens and four vestrymen, a majority was present and there was compliance with the governing requirement for a quorum. All six voted for Dr. Sidener's election.

The judgment should be reversed on the law and the facts, with costs, and judgment should be entered in favor of plaintiffs, without costs. Findings of fact, insofar as they may be inconsistent herewith, should be reversed and new findings should be made as indicated herein.

NOLAN, P. J. (concurring). I agree with Mr. Justice WENZEL in his opinion that the judgment appealed from should be reversed, and in his statement of the reasons which require that determination. We disagree only with respect to the disposition of other issues, which could be decided either way, without changing the result.

If we have correctly decided, as I believe we have, that matters affecting the pastoral relation, such as the election of a rector in a Protestant Episcopal Church are governed by the laws of the church, and not by the provisions of our statute

(Religious Corporations Law, § 42), there remains but one question to be determined, and that is whether Dr. Sidener was elected by a sufficient vote at a meeting attended by persons whose positions and number qualified them to act, according to the relevant ecclesiastical law. Concededly, the required canonical procedure was followed in all other respects. In the decision of that question it can make little difference whether we regard the judgment pronounced by the Bishop at the service of institution as an authoritative ecclesiastical determination which we are required to treat as binding on the civil courts, or merely as evidence of the ecclesiastical law. Either course should lead us to the same conclusion, and it is not essential that we decide which course to follow. However, if it be assumed that the Bishop's judgment is a determination which is binding on the civil courts, I see no reason why it may not be so considered as a ground for reversal. It is true that the fact of the judgment was not pleaded in the supplemental complaint. It was established however, by evidence received on the trial, and the question has been briefed and argued on this appeal, all without objection that it was not within the issues. We may, consequently, consider the supplemental complaint amended to conform with the proof or disregard the defect in the pleading. (Cf. *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.,* 152 N. Y. 251; *Sweeney* v. *City of New York,* 225 N. Y. 271, 274; *Pattison* v. *Pattison,* 301 N. Y. 65, 68; *Gorham* v. *Arons,* 306 N. Y. 782; *Nirenstein* v. *George A. Horvath, Inc.,* 286 App. Div. 409, 412.)

Again, if we have correctly decided that the procedure to be followed in the election of a rector is provided by the canon law, and, consequently, is not governed by section 42 of the Religious Corporations Law, it is not necessary to determine whether the provisions of that section of the statute were complied with at the meeting at which Dr. Sidener was elected. In view of the contrary conclusion expressed by the learned Official Referee, however, and the reliance of the defendants on the quorum provisions of that section, some further discussion of the question may be in order.

The vestry, or trustees of a Protestant Episcopal Church incorporated in this State, consist of the churchwardens and the vestrymen, together with the rector, when there is one (Religious Corporations Law, § 41). There must be 2 churchwardens, and there may be 3, 6, 9, 12, 15, 18, 21 or 24 vestrymen (Religious Corporations Law, § 40). In the Church of the Holy Trinity, the authorized number of vestrymen was 9. At the time of Dr. Sidener's election, there being no rector,

the whole number of the members of the vestry if all positions were filled was 11. Dr. Sidener was elected by the unanimous vote of two churchwardens and four vestrymen, which was that of a majority of the vestry and fully complied with the provisions of section 42, insofar as they purport to govern such an election.

The Religious Corporations Law was first enacted, substantially in its present form in 1895. (L. 1895, ch. 723.) Section 32 (later renumbered 42) made provision for the notice necessary to call a meeting of the vestry or trustees, and the persons and number necessary to constitute a quorum at a vestry meeting. If there was a rector no meeting could be held without his attendance and that of at least one churchwarden and a majority of the vestrymen (subd. numbered 1), or both churchwardens and one less than a majority of the vestrymen (subd. numbered 2) unless the rector was absent from the diocese, and had been so absent for over four months, or unless the meeting had been called by the rector, and he was absent therefrom or was incapable of acting. In any of such events, a vestry meeting could be held without the rector's presence, if there were present one churchwarden and a majority of the vestrymen, or both churchwardens, and one less than a majority of the vestrymen (subd. numbered 3). However, the vestry could meet, if there was no rector, if all members were present, or if notice of the meeting had been given by a churchwarden, and at such a meeting the vestry could, subject to the canons of the church and the diocese, by a majority vote, elect a rector to fill the vacancy (subd. numbered 3). The latter provision, contained in the last sentence of the section, was the only one which referred specifically to the election of a rector, or which purported to state the number of votes necessary for such action. No other provision was made for the composition of a quorum at such a meeting.

These quorum provisions were inadequate to provide for the procedure to be followed under all circumstances. No provision was made for a quorum consisting of less than all the members at a meeting of the vestry for the transaction of corporate business if there was no rector. Neither was provision made for the transaction of corporate business if there should be a rift between the rector and the vestry. In such a case the rector could at least seriously impede action by the vestry by refusing to call, or attend a vestry meeting. As far as the statute did make specific provisions for quorums, however, it was understandable and unambiguous, and appears to have been designed, except as provided in its last sentence, to require for valid

action by the vestry, meeting as corporate trustees, the attendance of a majority of the whole number of its members including at least one churchwarden. In the computation of the majority, the rector was counted as a member, unless he was absent from the diocese and had been so absent for more than the stated period, was incapable of acting, or had called the meeting and was absent therefrom. In any one of these three instances, which the Legislature apparently regarded as equivalent to a temporary vacancy in the office, or an indication of acquiescence in the action proposed to be taken which could not, in any event, impair his rights, the rector was not counted as a member for the purpose of the computation of the majority. The last sentence of the section was intended to govern the procedure at a meeting of the vestry, when there was no rector, to discharge an ecclesiastical duty. Here the statute purported to authorize action by a majority vote, subject however to the canon law.

Although the words " subject to " may not be capable of a precise definition which would be appropriate under all circumstances, their meaning in the instant case, when read in their context, is reasonably clear, on consideration of the purpose of the act, and the legislative intent, otherwise expressed (see Religious Corporations Law, §§ 5, 25, *inter alia*), to leave religious organizations free to administer ecclesiastical affairs according to the laws, discipline, rules and usages of the religious denomination or ecclesiastical governing body with which each such organization might be connected. The words " subject to the canons " of the church and diocese clearly meant that there could be no valid election of a rector without full compliance with the relevant canon law. (See *Fiske* v. *Beaty,* 206 App. Div. 349, affd. 238 N. Y. 598; *Ackley* v. *Irwin,* 69 Misc. 56, 58.) It seems just as clear that they did not mean that both the canon law and the statute law should be complied with, if the two were in conflict. Both the right to elect, and the requirement for a majority vote were expressly made subject, or subordinate, to the canon law, or to state the provision in another way, the concurring vote of a majority of the vestry was required, unless a different procedure was provided by the canon law. It is not disputed that under the statute as originally enacted, or if the later amendment of the statute worked no change in the composition of a quorum at a meeting to elect a rector, the validity of Dr. Sidener's election could not have been questioned.

Despite the inadequacy of this portion of the statute, hereinbefore referred to, it remained unchanged for 24 years. In 1919, section 42 was amended so as to provide that if the rector of a

parish or church should refuse or neglect to call a meeting of the vestry or trustees on the written request of two thirds of the wardens and vestrymen, the meeting should be called by the clerk. (L. 1919, ch. 267.) It was simultaneously provided, by the amending act, that the vestry could hold meetings in the absence of the rector, if there were present one churchwarden, and one more than a majority of the vestrymen, or both churchwardens and a majority of the vestrymen. As the statute now reads, if there is a rector, the vestry may transact the corporate business at a meeting if there are present besides the rector a majority of the whole number of wardens and vestrymen (subd. numbered 1) or, as has been stated, in the absence of the rector if there are present one churchwarden and one more than a majority of the vestrymen, or both churchwardens and a majority of the vestrymen (subd. numbered 2). The vestry may also act in the absence of the rector as provided in the third numbered subdivision of the section, which remained unchanged, under any of the conditions therein specified. There was no change in the provisions of the last sentence. The statute still provides, as it did in 1895, that the vestry may, subject to the canon law, by a majority vote, elect a rector.

It is defendants' position that this amendment resulted in a statutory quorum requirement, too clear to permit resort to any other means for its construction (cf. *Meltzer* v. *Koenigsberg,* 302 N. Y. 523) and that by clear and unambiguous provisions the statute now provides that no meeting may be held to elect a rector without the presence of one churchwarden or both, and the number of vestrymen required by subdivision numbered 2 of the amended section. I am unable to agree that such was the result of the amendment. However clear this quorum provision may appear to be when separated from the rest of the section, its ambiguity becomes evident when it is read in its context, and the necessity for construction becomes for that reason quite apparent. (Cf. *People ex rel. Sav. Bank* v. *Butler,* 147 N. Y. 164, 167; *Cummings* v. *Board of Educ. of City of N. Y.,* 275 App. Div. 577, 586, affd. 300 N. Y. 611.) When we read the amended section as a whole, its second numbered subdivision appears to have been intended merely to provide for the quorum necessary to transact business at a meeting called by the clerk, after the neglect or refusal of the rector to call it. Such a purpose appears to be consistent with the plan evident in the original enactment to provide for corporate action through a majority of the vestry, and such construction would avoid inconsistencies and conflict between the various provisions of the section, which would be apparent if it were construed as defendants interpret it. For

instance, if it were intended by the second numbered paragraph to provide for the quorum necessary for action at a vestry meeting, if there was no rector, it is difficult to understand why one more than a majority of the vestry should be required to attend when, under the third numbered subdivision the vestry could act through a bare majority computed without counting the rector as a member if he was absent from the diocese or incapacitated.

However, we are not required to determine whether the provisions of subdivision numbered 2 may, or must, be so narrowly construed. If by force of its plain language it must be held to provide for the quorum necessary at a vestry meeting to transact corporate business, if there is no rector, it does not follow that it provides for a similar quorum at a meeting to elect a rector to fill a vacancy. So construed it would be in direct conflict with the provisions of the last sentence of the section which were obviously intended to govern such an election and which remained, after the amendment, precisely the same as they had been for 24 years prior thereto. I find no evidence in the amendment of 1919 of any legislative intent to change the rule with respect to such elections, or to provide that, after the effective date of the amendment, the Protestant Episcopal churches of this State might follow their canon law in a matter of such grave ecclesiastical concern, only if their vestries should act through statutory quorums. The rector of such a church is by force of our statute (Religious Corporations Law, § 41) a member of the board of trustees of the church corporation by virtue of his rectorship, and thus is given a voice in the management of the corporate business. No one disputes the right of the Legislature so to provide. It is far different, however, to say that the rector of a Protestant Episcopal church, duly instituted and commissioned as such, according to the canons, rules and usages of the church and the diocese, may not discharge the religious duties and responsibilities, incident to his position, in the spiritual leadership and guidance of his congregation, and in the control of worship in the church and the buildings used for parochial purposes, unless he has first qualified as a corporate director according to the laws of the State. It is not in that capacity that he conducts divine services, administers the sacraments or performs the religious rites and ceremonies of the church. None of the powers which the rector exercises on such occasions are conferred upon him by the congregation or " by the corporation, by its vestry, or by its corporators." (*Fiske* v. *Beaty,* 206 App. Div. 349, 356, *supra.*) As was said in the *Fiske* case (pp. 356–357):

" The true doctrine of the Protestant Episcopal Church in America, in relation to the sources of power of a priest or rector, as we understand it, is correctly expressed as follows: ' In the Church, power does not *ascend* from the congregation or the vestry to the rector; it *descends* from above to the Bishop and through the Bishop to the subordinate ministry.' (White's Church Law [ed. 1898], 185.) '' Any attempt to restrict such power or the discharge of the religious duties incident thereto by the imposition of conditions prescribed by the State would constitute an unwarranted intrusion into the internal affairs of the church, violative of the constitutional guarantee of freedom of religions from such governmental interference, and a serious threat to freedom of religious worship. I am unable to agree that such was the legislative intent in the amendment of section 42 of the Religious Corporations Law, and we are required to find that it was not, if we may properly do so. A statute must be construed if possible " in manner which would remove doubt of its constitutionality, and possible danger that it might be used to restrain or burden freedom of worship." (*People* v. *Barber*, 289 N. Y. 378, 385.) The amendment of section 42 in 1919 made no change in the statutory language which provided for the vote, and consequently the quorum necessary to elect a rector, by stating that the vestry could act in such a matter by a majority vote, subject to the canon law. No change in this rule was intended or effected, and the vote by which Dr. Sidener was elected in compliance therewith was entirely sufficient for that purpose. Although I do not believe that plaintiffs may have all the relief demanded in the supplemental complaint, that question may be determined on the settlement of our order.

I concur for reversal and for judgment in favor of the plaintiffs.

BELDOCK, J. (dissenting). I am in agreement with the conclusions of the learned Official Referee.

At a meeting of the vestry of the plaintiff church on February 6, 1956, at which the 2 churchwardens and only 4 out of the 9 authorized vestrymen were present, plaintiff Dr. Sidener was nominated to be rector. At a vestry meeting held on February 7, 1956 the 6 persons present at the February 6th meeting elected Dr. Sidener rector. On March 5, 1956 an institution of the new rector took place, during which the Bishop (the governing ecclesiastical authority) declared that Dr. Sidener had been duly elected.

The sole question presented on this appeal is whether there was a quorum present at the vestry meetings on February 6

and 7, 1956. Plaintiffs contend that the 6 persons present at both meetings constituted a quorum. Defendants contend that a quorum required the presence of 7 persons, i.e., an additional vestryman. If plaintiffs are correct, Dr. Sidener was duly elected. If defendants are correct, Dr. Sidener was not duly elected. The learned Official Referee held that a quorum was not present under the provisions of section 42 of the Religious Corporations Law.

The majority of this court concedes that, if section 42 of the Religious Corporations Law is applicable, a quorum was not present at either of the two vestry meetings, with the result that the nomination, election, and subsequent institution of Dr. Sidener were invalid.

Section 42 of the Religious Corporations Law consists of a single paragraph. Among other things, it provides what shall constitute a quorum of the vestry. As applied to the case at bar, since the 2 churchwardens were present at the meetings of February 6 and 7, 1956, the presence of 5 of the 9 vestrymen was also required. There were only 4 vestrymen present. The section further provides that the vestry may, subject to the Canons of the General Church and of the Diocese, by a majority vote, elect a rector. The majority of the court is of the opinion that canon 11 (§ 2) of the General Canons is the canon of the General Church to which section 42 of the Religious Corporations Law is subject, and that under that canon the 6 persons present at the nomination and election meetings were sufficient to constitute a quorum. I do not agree with that view.

Canon 11 has nothing to do with the nomination or election of a rector. It is entitled " Of Standing Committees ". It deals only with standing or other committees of a diocese and not with a *vestry* of a particular church in a diocese. But even assuming that canon 11 applies to the nomination and election of a rector by the vestry of a particular church in a diocese, it nonetheless provides that a majority shall constitute a quorum only in cases in which a General Canon directs a duty to be performed, or a power to be exercised. Nowhere in any General Canon is there a direction of a duty or a power with respect to the *nomination* of a proposed rector. Plaintiffs do not claim, and the majority fails to demonstrate, that any General Canon contains a direction of a duty or a power with respect to such a nomination meeting of the vestry. Therefore, the provisions of canon 11 with respect to quorum are not applicable to the quorum required at a meeting for the nomination of a rector. Indeed, if canon 11 were held applicable, it would lead to an intolerable and intolerant result. The canon provides

that a majority of a quorum is competent to act. Therefore, the holding by the majority of this court would permit the nomination and election of a rector in the instant case by 4 of the 11 persons authorized to nominate and elect a rector. Such a result should not prevail.

The power to call and induct a rector in the Protestant Episcopal Church has been vested by statute in the vestry from 1813 (L. 1813, ch. 60) to the present. The statutes have always provided what shall constitute a quorum. Canon 11 did not come into existence until 1832, long after the power and duty to elect a rector had been granted by statute. Since the duty and power to nominate and elect a rector is solely statutory, the statutory provisions for quorum and election must govern.

The pronouncement of March 5, 1956 at the institution of Dr. Sidener did not constitute a binding judgment of the Bishop that the election was valid. Such judgments are valid only when they are not arbitrary. (*Gonzalez* v. *Archbishop,* 280 U. S. 1, 16.) In my opinion, the judgment of the Bishop was arbitrary because it was in direct violation of section 42 of the Religious Corporations Law.

Nor do I agree with the suggestion of the majority that, if section 42 of the Religious Corporations Law provides what should constitute a quorum in the matter of the election of a rector, it would be unconstitutional as prohibiting the free exercise of religion. All that *Kedroff* v. *St. Nicholas Cathedral* (344 U. S. 94) holds is that a statute which *directs* that a church should be governed by one administrator rather than another, or which passes control of church matters from one church authority to another is unconstitutional. But a statute which merely defines what shall constitute a quorum of the vestry is not within the condemnation of the rule stated. The *Kedroff* case specifically recognizes that it is only freedom to select clergy, where no improper methods of choice are proven, which is entitled to constitutional protection. (*Kedroff* v. *St. Nicholas Cathedral, supra,* p. 116; see, also, *Gonzalez* v. *Archbishop,* 280 U. S. 116, *supra.*) The case at bar concerns an improper method of choice of Dr. Sidener.

Section 25 of the Religious Corporations Law, on which the majority relies, provides that church corporation meetings are to be held, conducted, and governed by the laws, regulations, practice, discipline, rules and usages of the religious denomination involved. There is no law, regulation, practice, discipline, rule or usage of the Protestant Episcopal Church which states what shall constitute a quorum at any meeting of the vestry.

There being no contrary requirement of the church, section 42 of the Religious Corporations Law controls, with the result that in the case at bar the presence of 7 persons was necessary to constitute a quorum. Furthermore, section 25 of the Religious Corporations Law applies generally to all church corporations. Therefore, it may not be deemed to supersede in any respect section 42 of the Religious Corporations Law, which deals specifically with Protestant Episcopal Churches. If there is any inconsistency between the two, the specific statute must be held to govern.

The judgment should be affirmed.

Ughetta and Hallinan, JJ., concur with Wenzel, J.; Nolan, P. J., concurs in separate opinion; Beldock, J., dissents and votes to affirm in opinion.

Judgment reversed on the law and the facts, with costs, and judgment directed to be entered in favor of plaintiffs, without costs. Findings of fact, insofar as they may be inconsistent with the opinion herein, are reversed and new findings are made as indicated therein.

Submit orders for settlement on or before 12 o'clock noon on June 26, 1957.